# HOLLAND *v.* CHALLEN.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF NEBRASKA.

Submitted December 13th, 1883.—Decided January 7th, 1884.

*Equity—Nebraska—Statutes.*

1. A statute of Nebraska provided that an action may be brought and prosecuted to final decree, judgment, or order, by any person or persons,

whether in actual possession or not, claiming the title to real estate, against any person or persons who claim an adverse estate or interest therein, for the purpose of determining such estate or interest, and quieting the title to such real estate: *Held*, That it dispensed with the general rule of courts of equity, that in order to maintain a bill to quiet title, it is necessary that the party should be in possession, and in most cases that his title should have been established by law, or founded on undisputed evidence, or long continued possession. *Clark* v. *Smith*, 13 Pet. 195, with reference to a Kentucky statute in some respects similar, approved.

2. Jurisdiction over proceedings to quiet title and prevent litigation is inherent in courts of equity ; and although the courts have imposed limitations upon its exercise, it is always competent for the legislative power to remove those restrictions.

3. While it is true that alterations in the jurisdiction of State courts cannot affect the jurisdiction of the Circuit Courts of the United States, so long as the equitable rights themselves remain ; yet an enlargement of equitable rights may be administered by the Circuit Courts as well as by the courts of the State.

4. Under the Nebraska statute cited above, a bill to quiet title which, on its face, presented a good title in the complainant, gave him the right to call upon the defendant to produce and disclose whatever estate he had in the premises in question, to the end that its validity might be determined, and, if adjudged invalid, that the title of the plaintiff might be quieted.

Bill in equity to quiet title. Plaintiff claimed under a tax sale, but did not aver possession. Defendant was owner prior to the tax sale. The bill charged :

"That said defendant is contriving now to wrong and injure your orator in the premises by claiming to be the owner of said real estate, and by trying to obtain, take, and keep possession thereof, and by denying and slandering your orator's title to and his right of possession thereof, all of which acts, doings, and pretences of said defendant are contrary to equity and good conscience, and tend to the manifest wrong, injury, and oppression of your orator in the premises."

The defendants demurred, and the court below dismissed the bill. The plaintiff appealed.

*Mr. Lewis A. Groff* and *Mr. C. S. Montgomery* for appellant.

*Mr. T. W. Marquett* and *Mr. Geo. W. Doane* for appellee. —I. This bill is exhibited by the holder of the tax titles to

have the same established as against the true owner, who claimed the fee-simple title, before the complainant acquired any interest in the property described in the bill, and who still claims it. The title so held by complainant, and the only title which he holds, as shown by the averments of his bill, is at best a very doubtful title, and the principle applied by courts of equity is, that where a complainant has himself a doubtful title, he cannot have the relief sought in a bill *quia timet*. *West v. Schuebley*, 54 Ill. 523; *Huntington v. Allen*, 44 Miss. 654; *Low v. Staples*, 2 Nev. 209.—II. The bill states no facts constituting grounds for equitable relief. It sets forth the tax deeds held by complainant, the adverse fee-simple title claimed by the defendant, that complainant is entitled to possession and that defendant is keeping him out of possession, or in the language of the bill, "trying to obtain, take and keep possession thereof," and denying the right of possession of complainant. These allegations are sufficient as the basis of an action at law to recover possession, but there is not an allegation in the bill showing any ground for equitable jurisdiction.

MR. JUSTICE FIELD delivered the opinion of the court.

This is a suit in equity to quiet the title of the plaintiff to certain real property in Nebraska as against the claim of the defendant to an adverse estate in the premises. It is founded upon a statute of that State which provides:

"That an action may be brought and prosecuted to final decree, judgment, or order by any person or persons, whether in actual possession or not, claiming title to real estate, against any person or persons who claim an adverse estate or interest therein, for the purpose of determining such estate or interest and quieting the title to such real estate."

The bill alleges that the plaintiff is the owner in fee simple and entitled to the possession of the real property described. It then sets forth the origin of his title, particularly specifying the deeds by which it was obtained, and alleges that the defendant claims an adverse estate or interest in the premises;

that the claim so affects his title as to render a sale or other disposition of the property impossible, and that it disturbs him in his right of possession. It therefore prays that the defendant may be required to show the nature of the adverse estate or interest claimed by her; that the title of the plaintiff may be adjudged valid and quieted as against her and parties claiming under her, and his right of possession be thereby assured; and that the defendant may be decreed to have no estate in the premises and "be enjoined from in any manner injuring or hindering" the plaintiff in his title and possession.

The defendant demurred to the bill, on the ground that the plaintiff had not made or stated such a case as entitled him to the discovery or relief prayed. The court below sustained the demurrer and dismissed the bill. From this decree the case is brought here on appeal.

It does not appear from the record in what particulars it was contended in the court below that the bill is defective, that is, in what respect it fails to show a right to the relief prayed. We infer, however, from the briefs of counsel, that the same positions now urged in support of the decree were then urged against the bill, that is, that the title of the plaintiff to the property has not been by prior proceedings judicially adjudged to be valid, and that he is not in possession of the property—the contention of the defendant being, that when either of these conditions exists, a court of equity will not interpose its authority to remove a cloud upon the title of the plaintiff and determine his right to the possession of the property.

The statute of Nebraska enlarges the class of cases in which relief was formerly afforded by a court of equity in quieting the title to real property. It authorizes the institution of legal proceedings not merely in cases where a bill of peace would lie, that is, to establish the title of the plaintiff against numerous parties insisting upon the same right, or to obtain repose against repeated litigation of an unsuccessful claim by the same party; but also to prevent future litigation respecting the property by removing existing causes of controversy as to its title, and so embraces cases where a bill *quia timet* to remove a cloud upon the title would lie.

A bill of peace against an individual reiterating an unsuccessful claim to real property would formerly lie only where the plaintiff was in possession and his right had been successfully maintained. The equity of the plaintiff in such cases arose from the protracted litigation for the possession of the property which the action of ejectment at common law permitted. That action being founded upon a fictitious demise, between fictitious parties, a recovery in one action constituted no bar to another similar action or to any number of such actions. A change in the date of the alleged demise was sufficient to support a new action. Thus the party in possession, though successful in every instance, might be harassed and vexed, if not ruined, by a litigation constantly renewed. To put an end to such litigation and give repose to the successful party, courts of equity interfered and closed the controversy. To entitle the plaintiff to relief in such cases, the concurrence of three particulars was essential: He must have been in possession of the property, he must have been disturbed in its possession by repeated actions at law, and he must have established his right by successive judgments in his favor. Upon these facts appearing, the court would interpose and grant a perpetual injunction to quiet the possession of the plaintiff against any further litigation from the same source. It was only in this way that adequate relief could be afforded against vexatious litigation and the irreparable mischief which it entailed. Adams on Equity, 202; Pomeroy's Equity Jurisprudence, § 248; *Stark* v. *Starrs*, 6 Wall. 402; *Curtis* v. *Sutter*, 15 Cal. 259; *Shepley* v. *Rangeley*, 2 Ware, 242; *Devonsher* v. *Newenham*, 2 Schoales & Lef. 199.

In most of the States in this country, and Nebraska among them, the action of ejectment to recover the possession of real property as existing at common law has been abolished with all its fictions. Actions for the possession of such property are now not essentially different in form from actions for other property. It is no longer necessary to allege what is not true in fact and not essential to be proved. The names of the real contestants must appear as parties to the action, and it is generally sufficient for the plaintiff to allege the possession or

seizin by him of the premises in controversy, or of some estate therein, on some designated day, the subsequent entry of the defendant, and his withholding of the premises from the plaintiff; and although the plaintiff may in such cases recover, when a present right of possession is established, though the ownership be in another, yet such right may involve, and generally does involve, a consideration of the actual ownership of the property; and in such cases the judgment is as much a bar to future litigation between the parties with respect to the title as a judgment in other actions is a bar to future litigation upon the subjects determined. Where this new form of action is adopted, and this rule as to the effect of a judgment therein obtains, there can be no necessity of repeated adjudications at law upon the right of the plaintiff as a preliminary to his invoking the jurisdiction of a court of equity to quiet his possession against an asserted claim to the property.

A bill *quia timet*, or to remove a cloud upon the title of real estate, differed from a bill of peace in that it did not seek so much to put an end to vexatious litigation respecting the property, as to prevent future litigation by removing existing causes of controversy as to its title. It was brought in view of anticipated wrongs or mischiefs, and the jurisdiction of the court was invoked because the party feared future injury to his rights and interests. Story's Equity, § 826. To maintain a suit of this character it was generally necessary that the plaintiff should be in possession of the property, and, except where the defendants were numerous, that his title should have been established at law or be founded on undisputed evidence or long continued possession. *Alexander* v. *Pendleton*, 8 Cranch, 462; *Peirsoll* v. *Elliott*, 6 Pet. 95; *Orton* v. *Smith*, 18 How. 263.

The statute of Nebraska authorizes a suit in either of these classes of cases without reference to any previous judicial determination of the validity of the plaintiff's right, and without reference to his possession. Any person claiming title to real estate, whether in or out of possession, may maintain the suit against one who claims an adverse estate or interest in it, for the purpose of determining such estate and quieting the title.

It is certainly for the interest of the State that this jurisdiction of the court should be maintained, and that causes of apprehended litigation respecting real property, necessarily affecting its use and enjoyment, should be removed; for so long as they remain they will prevent improvement and consequent benefit to the public. It is a matter of every-day observation that many lots of land in our cities remain unimproved because of conflicting claims to them. The rightful owner of a parcel in this condition hesitates to place valuable improvements upon it, and others are unwilling to purchase it, much less to erect buildings upon it, with the certainty of litigation and possible loss of the whole. And what is true of lots in cities, the ownership of which is in dispute, is equally true of large tracts of land in the country. The property in this case, to quiet the title to which the present suit is brought, is described in the bill as unoccupied, wild, and uncultivated land. Few persons would be willing to take possession of such land, enclose, cultivate and improve it, in the face of a disputed claim to its ownership. The cost of such improvements would probably exceed the value of the property. An action for ejectment for it would not lie, as it has no occupant; and if, as contended by the defendant, no relief can be had in equity because the party claiming ownership is not in possession, the land must continue in its unimproved condition. It is manifestly for the interest of the community that conflicting claims to property thus situated should be settled, so that it may be subjected to use and improvement. To meet cases of this character, statutes, like the one of Nebraska, have been passed by several States, and they accomplish a most useful purpose. And there is no good reason why the right to relief against an admitted obstruction to the cultivation, use, and improvement of lands thus situated in the States should not be enforced by the federal courts, when the controversy to which it may give rise is between citizens of different States.

In *Clark* v. *Smith*, 13 Pet. 195, a doctrine is declared, with reference to the legislation of Kentucky as to the removal of clouds upon titles to land, which seems to us to be applicable here, and to be decisive of this point. A law of

that State, regulating proceedings in the courts of chancery, provided:

"That any person having both the legal title to and possession of land may institute a suit against any other person setting up a claim thereto, and if the complainant shall be able to establish his title to such land, the defendant shall be decreed to release his claim thereto and pay the complainant his costs, unless the defendant shall by answer disclaim all title to such lands, and offer to give such release to the complainant."

Under that act, the complainant Clark filed a bill in the Circuit Court of the United States to compel the defendant to release the title claimed by him to certain lands, under patents from the State of Kentucky, obtained years after the registration of the survey of the ancestor of the complainant and patent to him. The Circuit Court heard the evidence of the parties as to their respective claims, and was of opinion that the complainant had established a legal title to the premises under a valid grant from the commonwealth, and was in possession at the commencement of the suit, and that the defendant had not shown any right or title, either in law or in equity, to the land or any part of it; but being divided in opinion on the question of the jurisdiction of the court to compel the defendant to execute a conveyance, the bill was dismissed. On the case coming here, the decree below was reversed. In giving its decision this court referred to the unsettled condition of titles in Kentucky, and observed that,

"Conflicts of title were unfortunately so numerous that no one knew from whom to buy or take lands with safety, nor could improvements be made, without great hazard, by those in possession who had conflicting claims hanging over them, and which might thus continue for half a century; the writ of right being limited to fifty years in some cases, that is, where it was brought upon the seizin of an ancestor or predecessor, and to thirty years if on the demandant's own seizin. During all which time the party in possession had no power to litigate, much less to settle the title at law, though he might be harassed by many actions of ejectment and his peace and property destroyed, although always suc-

cessful, by no means an uncommon occurrence.   This evil it was the object and policy of the legislature to cure, not so much by prescribing a mode of proceeding as by conferring a right on him who had the better title and the possession to draw to him the outstanding inferior claims."   And again : "Kentucky has the undoubted power to regulate and protect individual rights to her soil and to declare what should form a cloud on titles ; and, having so declared, the courts of the United States, by removing such clouds, are only applying an old process to a new equity created by the legislature, having its origin in the peculiar condition of the country."   "The State legislatures," the court added, "certainly have no authority to prescribe the forms and modes of proceeding in the courts of the United States, but having created a right and at the same time prescribed the remedy to enforce it, if the remedy prescribed is substantially consistent with the ordinary modes of proceeding on the chancery side of the federal courts, no reason exists why it should not be pursued in the same form as in the State court ; on the contrary, propriety and convenience suggest that the practice should not materially differ where titles to lands are the subjects of investigation.   And such is the constant course of the federal courts."

The opinion concludes with the observation :

"That when investigating and decreeing on titles in this country we must deal with them in practice as we find them, and accommodate our modes of proceeding, in a considerable degree, to the nature of the case and the character of the equities involved in the controversy, so as to give effect to State legislation and State policy ; not departing, however, from what legitimately belongs to the practice of a court of chancery."

That case differs from the one at bar in that the complainant was in possession of the premises at the commencement of the suit, and the law of Kentucky gave the right to the relief claimed only to persons having both the legal title and the possession.   But the law did not require that such possession should have been disturbed by legal proceedings and that the title of the plaintiff should be sustained in them by judgments in his favor, before the court could entertain jurisdiction of the

case and grant the relief prayed; and therefore no such disturbance of his possession and adjudication sustaining his title were held to be essential to the maintenance of the suit. If the jurisdiction to grant the relief prayed remained unaffected when the legislature had thus dispensed with previous legal proceedings affecting the possession of the plaintiff, it would seem to follow that the jurisdiction would remain unimpaired if possession itself, as a condition of the institution of the suit, was also dispensed with.

The truth is that the jurisdiction to relieve the holders of real property from vexatious claims to it casting a cloud upon their title, and thus disturbing them in its peaceable use and enjoyment, is inherent in a court of equity; and though conditions to its exercise have at different times been prescribed by that court, both in England and in this country, they may at any time be changed or dispensed with by the legislature without impairing the general authority of the court. Pomeroy's Equity Jurisprudence, § 1398. The equitable rights of parties in Nebraska claiming the legal title to real property are simply enlarged by its statute, not changed in character. And the language used by this court, speaking by Mr. Justice Bradley, in the *Broderick Will Case*, 21 Wall. 520, is appropriate here: "Whilst it is true that alterations in the jurisdiction of the State courts cannot affect the equitable jurisdiction of the Circuit Courts of the United States, so long as the equitable rights themselves remain, yet an enlargement of equitable rights may be administered by the Circuit Courts as well as by the courts of the State." And it may be affirmed of this case, what was said as probably true of that one, that it is "a case in which an enlargement of equitable rights is effected, although presented in the form of a remedial proceeding." "Indeed," as the court there observed, "much of equitable jurisdiction consists of better and more effective remedies for attaining the rights of parties."

No adequate relief to the owners of real property against the adverse claims of parties not in possession can be given by a court of law. If the holders of such claims do not seek to enforce them, the party in possession, or entitled to the pos-

session—the actual owner of the fee—is helpless in the matter, unless he can resort to a court of equity.

It does not follow that by allowing in the federal courts a suit for relief under the statute of Nebraska, controversies properly cognizable in a court of law will be drawn into a court of equity. There can be no controversy at law respecting the title to or right of possession of real property when neither of the parties is in possession. An action at law, whether in the ancient form of ejectment or in the form now commonly used, will lie only against a party in possession. Should suit be brought in the federal court, under the Nebraska statute, against a party in possession, there would be force in the objection that a legal controversy was withdrawn from a court of law; but that is not this case, nor is it of such cases we are speaking. Undoubtedly, as a foundation for the relief sought, the plaintiff must show that he has a legal title to the premises, and generally that title will be exhibited by conveyances or instruments of record, the construction and effect of which will properly rest with the court. Such, also, will generally be the case with the adverse estates or interests claimed by others. This was the character of the proofs establishing the title of the complainant in *Clark* v. *Smith*, already cited. But should proofs of a different character be produced, the controversy would still be one upon which a court of law could not act. It is not an objection to the jurisdiction of equity that legal questions are presented for consideration which might also arise in a court of law. If the controversy be one in which a court of equity only can afford the relief prayed for, its jurisdiction is unaffected by the character of the questions involved.

In the present case the plaintiff claims under a purchaser at a tax sale by the State, to whom deeds by the treasurer of the county in which the property is situated were executed. By the law of Nebraska the fee of real property, and not merely a term of years, may be sold for unpaid taxes. A certain time is allowed to the owner to redeem the property from such a sale, but if redemption is not made within the period designated, a deed is executed by the treasurer of the county to the purchaser, and such deed vests in him the right,

title, and estate of the former owner of the land and also of the State and county, and is evidence in all courts that the property conveyed was subject to the taxes for the years stated; that they were not paid, and that redemption was not made before the sale; that the property had been properly listed and assessed and the taxes properly levied; that the property was advertised for sale in the manner and for the length of time required, and was sold as stated in the deed, and that the grantee named was the purchaser or assignee of the purchaser of the property; and, indeed, that all the prerequisites of the law had been complied with by the officers whose duty it was to have taken any part in the transaction relating to or affecting the title conveyed. No person is permitted to question the title thus acquired without showing that he had title to the property at the time of the sale, or has since obtained the title from the United States, and that the property was not subject to taxation for the years named; or that the taxes had been paid before the sale, or that the property had never been assessed for taxation, or had been redeemed from the sale, or that there had been fraud committed by the officer in making the sale, or by the purchaser to defeat it.

The plaintiff, therefore, had a complete legal title to the premises in controversy, unless some one of the defects mentioned, affecting the validity of the assessment and sale of the property, existed at the time, or fraud had been committed by the officer or purchaser in the sale. Having an apparent legal title by the deeds, it was, of course, important to him and, indeed, necessary for the peaceable possession of the property and its improvement, to have any adverse claims, notwithstanding such deeds, considered and settled.

We think, therefore, that he was entitled, upon the statement made in his amended bill, the only one before us, to call upon the defendant to produce and disclose whatever estate she had in the premises in question, to the end that its validity may be determined; and if adjudged invalid, that the title of the plaintiff may be quieted. It follows that the decree of the court below must be reversed and the cause remanded, with leave to the defendant to answer the bill; and *It is so ordered.*