## LANIER *v.* ALISON and another.

*(Circuit Court, S. D. Georgia, E. D.   June 4, 1887.)*

1. EQUITY—JURISDICTION.
   Equity will not entertain a bill to enforce merely the legal title to land.
2. INJUNCTION—TO RESTRAIN WASTE.
   The ancient equity doctrine, which would refuse an injunction to restrain waste, where a bill is filed for an account, has been greatly modified; and in cases where irremediable mischief is being done or threatened, such as the extraction of ores from a mine, or the cutting down of timber, an injunction will issue, though the title to the premises be in litigation.
3. SAME—PLEADING.
   An act of the general assembly of Georgia, providing that in all applications to enjoin the cutting of timber, or boxing the same for turpentine purposes, it shall not be necessary to aver or prove insolvency, may be administered by the equity courts of the United States.

*(Syllabus by the Court.)*

In Equity.   Demurrer to bill.

*Lanier & Anderson*, for complainant.

*Garrard & Meldrim*, for respondents.

SPEER, J.   Mary D. Lanier, a citizen of the state of Maryland, brings her bill against J. R. Alison, of Irwin county, and B. D. Britton, of Echols county, and alleges that she is the owner of lot of land No. 83, in the Thirteenth district of Echols county, and lot of land No. 68, in the same district of Echols county, containing 490 acres each; that the deeds were properly recorded; that during the life-time of her fa-

ther, Charles Day, he owned one lot and controlled the other, and took special pains to protect the lots from intrusion by squatters and other trespassers; that Alison & Britton addressed a letter to her father on the twenty-eighth of July, 1883, stating that they had been informed that he held the genuine title to the lots, and asking him to put a price on them. Her father replied that he was unwilling to lease them for turpentine purposes, but would sell them for $1.50 per acre. Notwithstanding this actual notice, and additional notice from one Frank Kirkland, her agent, that the true title was in her father, and a letter from Henry C. Day calling Alison & Britton's attention to the former correspondence, the defendants, in December, 1883, entered on the lands, cut, hacked, and boxed the trees for turpentine purposes, and have continued to do so, injuring complainant $5,000, or other large sum; that complainant is remediless at law, because she cannot ascertain the amount of crude rosin, gum, and turpentine which has been taken from the land; and that equity should intervene to prevent a multiplicity of suits. She also alleges that the defendants have some pretended title which operates as a fraud on her title, and should be canceled. She prays for an injunction, for the production of the books and accounts, and also the deeds and other contracts in writing under which they claim the right to enter and use said lands, to be delivered up and canceled. Complainant waives discovery. To the bill is appended an abstract of the deeds upon which complainant relies, showing apparently a good title. Several amendments have been filed to the bill; one averring that Alison & Britton have executed mortgages on said land in favor of J. P. Williams, a citizen of Chatham county, state of Georgia,—one dated twenty-second June, 1883, for $4,821.43; another, twenty-third January, 1884, for $3,500; that these mortgages were in fraud of the right of complainant; that the mortgagee, J. P. Williams, had notice of complainant's title, because the deeds were recorded; that Alison & Britton are embarrassed, and it is doubtful whether they can pay their debts; that J. P. Williams has received and sold $5,000 worth of turpentine from said land, and that she is entitled to have an accounting from him, and prays that he may be made a party. The third amendment avers that complainant is informed and believes, and so charges, that Alison & Britton had no deed or claim of title when they entered on the land, but that their sole motive was to trespass and take the turpentine and other products of the pine forest; that they do not occupy the land continuously, but only during the turpentine season; that the lands are so remote and uninhabitable that she is unable, without ruinous expense, to prevent the encroachment and trespasses of the defendants. She also charges, upon information and belief, that Williams knew of her title, and of her father's. She finds that she is unable to prove the allegations of her original bill, strikes out the waiver of discovery, prays discovery, and propounds a number of interrogatories relating to the title of complainant, and to the amount and value of the turpentine taken from the land. To this bill the defendants demur, because the complainant has a complete and adequate remedy at law, and because the bill is exhibited against several

defendants for several and distinct matters, and is multifarious, and that the court has no jurisdiction.

It is very evident that most of the relief sought by complainant is not properly a matter for equitable cognizance. Equity will not entertain a bill merely to try and enforce the legal title to land. This is a bill for an account, and to restrain waste; and Lord ELDON is reported to have said that if "the plaintiff filed a bill for an account, and an injunction to restrain waste, stating that the defendant claimed by a title adverse to his, he stated himself out of court as to the injunction." This doctrine has been greatly modified in modern times, and it is now a common practice, in cases where irremediable mischief is being done or threatened, going to the destruction of the substance of the estate, such as the extraction of ores from a mine, or the cutting down of timber, or the removal of coal, to issue an injunction, though the title to the premises be in litigation. The authority of the court is exercised in such cases, through its preventive writ, to preserve the property from destruction pending legal proceedings for the determination of the title. *Erhardt* v. *Boaro*, 113 U. S. 537, 5 Sup. Ct. Rep. 565.

The bill does not allege that Alison & Britton are insolvent, but the legislature of Georgia, to meet a widely-prevalent injury of the character specified in the bill, on the thirteenth of October, 1885, enacted the following statute:

"Be it enacted by the general assembly that, from and after the passage of this act, in all applications to enjoin the cutting of timber or boxing the same for turpentine purposes, it shall not be necessary to aver or prove insolvency, or that the damage will be irreparable: provided, the complainant has perfect title to the land upon which the timber is situated, and shall attach a copy of the same as an exhibit to the bill: and provided, further, that the chancellor granting said temporary restraining order shall require the complainant to give such bond as in his discretion he may deem proper (said bond to be approved of by the clerk of the superior court) to answer the damages, if any, which may be sustained by the defendant by reason of the granting of said injunction, which bond shall be held and taken as appeal-bonds; and if, on the final hearing of the cause, damages are adjudged against the complainant, judgment shall be entered on said bond as in appeal cases."

Now, while it is true that alterations in the jurisdiction of state courts cannot affect the jurisdiction of the circuit courts of the United States, so long as the equitable rights themselves remain, yet an enlargement of equitable rights may be administered by the circuit court as well as by the courts of the state. *Holland* v. *Challen*, 110 U. S. 15, 3 Sup. Ct. Rep. 495. And this statute may be entertained and enforced in an equity suit of which we otherwise have jurisdiction.

Considering the premises, it is ordered that the demurrer be overruled, so far as the application for an injunction is concerned, and that the defendants show cause why an injunction on the terms of the statute above quoted, *pendente lite*, should not be granted. As to the prayers of the bill not relating to the injunction, the demurrer is sustained, and the complainant must proceed at law for the assertion of her title, and her claim for mesne profits and damages.