GREENFIELD v. UNITED STATES MORTGAGE CO. OF SCOTLAND, Limited, et al.

(Circuit Court, E. D. Arkansas, N. D. December 20, 1904.)

No. 54.

1. EQUITY—CLOUD ON TITLE.

    Where plaintiff is the owner and in possession of real estate, and there is an outstanding claim, which on its face appears to impair plaintiff's title, but which may be shown by extrinsic proof to be invalid, plaintiff is entitled to maintain a bill to quiet his title and to remove such claim as a cloud thereon, without having first established his title in several actions at law.

**2. SAME—FEDERAL COURTS—JURISDICTION—AMOUNT INVOLVED.**

Where plaintiff sued to quiet title and to set aside a deed of trust on certain land, and also to vacate a deed executed to the purchaser under foreclosure of such deed of trust, but asked in the alternative that, if the deeds be not set aside, she be permitted to redeem on payment of the mortgage debt, interest, and costs, the amount involved, for the purpose of determining the jurisdiction of the federal Circuit Court, was the value of the land, and not the amount required to redeem.

In Equity. On motion to remand.

The complainant filed her bill in the chancery court of Jackson county, state of Arkansas, to remove as a cloud on her title to certain lands two deeds, under which the defendant mortgage company claims title to the same realty. The plaintiff, who is in possession of the premises in controversy, claims to be the owner thereof, and charges that on April 23, 1901, she, being then a married woman, was by force and threats compelled by her husband to execute a mortgage, in the nature of a trust deed with powers of sale, to the defendant Carlisle, as trustee, for the purpose of securing a loan made by the mortgage company to her husband, she receiving no part of the consideration, nor was the loan for the benefit of her separate estate. She also charges that the loan was usurious, and, under the laws of the state of Arkansas, absolutely void. That on the 13th day of March, 1903, the defendant Carlisle, under the powers contained in the mortgage deed, caused said lands to be sold for a default in the payment of the debt secured by it, and at such sale the mortgage company became the purchaser of the lands. She further charges that before the expiration of a year, within which time she was, under the laws of the state of Arkansas, permitted to redeem the premises from the foreclosure sale, she offered to do so, and tendered to the mortgage company the sum of $1,192, the amount of the sale, with interest and costs, which was refused by it. The prayer of the bill is that the mortgage deed, as well as the deed executed by the trustee to the mortgage company under the foreclosure, be canceled as a cloud on her title; or, if the court finds that the mortgage was valid, that she be permitted to redeem the lands from the sale upon payment of the sum of $1,192, which would be full satisfaction of the mortgage debt, interest, and costs. In due time the defendants, by proper proceedings, removed the cause from the state court to this court, alleging in their petition for removal that the matters in controversy exceeded in value the sum of $2,000, exclusive of interest and costs. Complainant now moves to remand the cause, upon the ground that the matter in dispute does not exceed in value the sum of $2,000, exclusive of interest and costs.

Jones & Jeffries, for complainant.
T. E. Hare, for defendants.

TRIEBER, District Judge. Whether, in an action to redeem from a mortgage, the jurisdiction of a national court is to be determined by the value of the land or the amount of the mortgage debt is immaterial, and need not be determined in this cause, as the main object of this bill is to cancel, not only the mortgage deed, but also the deed of the trustee, executed by him under the foreclosure proceedings to the mortgage company, which deed vests in the purchaser the entire fee to the estate. The prayer for relief, so far as it asks for a redemption, is only in the alternative in case the court

---

¶ 2. Jurisdiction of circuit courts as determined by the amount in controversy see notes to Auer v. Lombard, 19 C. C. A. 75; Tennent-Stribling Shoe Co. v. Roper, 36 C. C. A. 459.

holds that the mortgage and sale made thereunder are valid. Therefore the only question involved in this proceeding is whether, in an action to quiet title and remove a cloud on complainant's title, which cloud is caused by a mortgage for less than $2,000, but which mortgage has been foreclosed and a deed executed to the purchaser, the jurisdiction of the court is to be determined by the value of the land or the amount of the mortgage debt.

The allegation in the petition for removal that the value of the land exceeds $2,000 is not controverted. In fact, upon the argument, it was admitted that it was in excess of $2,000.

While at one time a bill of this kind could not be maintained unless the title of the complainant had been established in several actions at law, the modern rule is that it is not necessary that the complainant party should have been subjected to several actions of ejectment and been successful in them. It is sufficient if he is the owner and in possession of the premises, and there is an outstanding claim which, if valid, would affect or impair the title of the owner of a particular estate, and which apparently and on its face has that effect, but which can be shown by extrinsic proof to be invalid. Holland v. Challen, 110 U. S. 15, 3 Sup. Ct. 495, 28 L. Ed. 52; 6 Am. & Eng. Enc. Law, 150. The action may, in fact, be appropriately termed an action to try title by equitable proceedings, for the party in possession, being unable to maintain an action of ejectment against one claiming the lands, but out of possession, is remediless at law to quiet his title, and can only obtain adequate relief in an equitable proceeding of this kind. The title to the premises can be as effectually settled in such an action as it could be in an action of ejectment, especially if the defendant by cross-bill asks for confirmation of his title, which is frequently done, and has been done in this instance. The party in possession need not await the pleasure of the adverse claimant, who is out of possession, to have his rights determined.

In this country dealings in real estate constitute a very material part of the commercial transactions; conveyances and mortgages of that class of property amount to millions of dollars daily throughout the Union. To facilitate them and simplify conveyances has been the object of a great deal of legislation. The registration acts were the first, and probably the most important, step in that direction. In many states the old equity rule that a bill to quiet title can only be maintained by one in actual possession has been modified by statute, so that it does not apply to wild and unoccupied lands. In the language of Mr. Justice Field, in Holland v. Challen, supra:

"It is certainly for the interest of the state that this jurisdiction of the court should be maintained, and that causes of apprehended litigation respecting real property, necessarily affecting its use and enjoyment, should be removed; for so long as they remain they will prevent improvement and consequent benefit to the public. It is a matter of everyday observation that many lots of land in our cities remain unimproved because of conflicting claims to them. The rightful owner of a parcel in this condition hesitates to place valuable improvements upon it, and others are unwilling to purchase it, much less to erect buildings upon it, with the certainty of litiga-

tion and possible loss of the whole. And what is true of lots in cities, the ownership of which is in dispute, is equally true of large tracts of land in the country. The property in this case, to quiet the title to which the present suit is brought, is described in the bill as unoccupied, wild, and uncultivated land. * * * An action for ejectment for it would not lie, as it has no occupant; and if, as contended by the defendant, no relief can be had in equity because the party claiming ownership is not in possession, the land must continue in its unimproved condition. It is manifestly for the interest of the community that conflicting claims to property thus situated should be settled, so that it may be subjected to use and improvement." 110 U. S. 21, 3 Sup. Ct. 498, 28 L. Ed. 52.

A party in possession of lands, under claim of ownership, cannot maintain an action of ejectment to establish or settle his title, and, unless a court of equity can settle the title in a proceeding of this nature, not only will he be unable to find a purchaser for his lands, but he will not feel justified in making valuable improvements thereon himself as long as there is an outstanding title of record which is good on its face, although it may be shown by evidence dehors the record to be absolutely void. The law courts being remediless to grant the relief, courts of equity must be resorted to, and there is no reason why such courts should not assume jurisdiction and settle the title to real estate, when called upon by the party in possession thereof, upon the ground that no complete and adequate remedy can be obtained in a court of law. Public policy requires a speedy settlement of land titles, and courts of equity in this country for over 50 years have unhesitatingly assumed jurisdiction, for the purpose of settling them, when the common-law courts were powerless to do so.

If this view is correct, it follows as of course that the matter in controversy in this cause is the title to the lands, and not the mortgage debt, which was extinguished by the sale and the purchase by the beneficiary under the mortgage.

In Stinson v. Dousman, 20 How. 461, 15 L. Ed. 966, the action was to recover $481.16 as rent under a contract whereby Dousman covenanted to sell and convey to Stinson the lands for $8,000, to be paid, with interest at the rate of 10 per cent. annually, in three installments. The first installment of $2,000 and interest was to be paid the 1st of September, 1854. The vendee was required to keep the buildings insured, and engaged that the policy, in case of loss, should inure to the benefit of the vendor, and also agreed to pay all the taxes accruing from May, 1853. The contract concludes with an express condition:

"That in case of failure by the vendee to perform either of the covenants on his part, the vendor was at liberty to declare the contract void, and thereupon to recover, by distress or otherwise, all the interest which shall have accrued upon the contract up to the day of declaring the contract void, as rent for the use and occupation of the premises, and to take immediate possession thereof."

Upon appeal to the Supreme Court it was objected that the matter in dispute was not of the value of $1,000; that the only matter involved was the annual rent, which amounted to $481.16; and therefore that that court was without jurisdiction. But this objec-

tion was overruled by the court and its jurisdiction sustained, Mr. Justice Campbell, in delivering the opinion of the court, saying:

"But the equitable as well as the legal considerations involved in the cause are to be considered. The effect of the judgment is to adjust the legal and equitable claims of the parties to the subject of the suit. The subject of the suit is not merely the amount of rent claimed, but the title of the respective parties to the land under the contract."

In Smith v. Adams, 130 U. S. 167, 175, 9 Sup. Ct. 566, 569, 2 L. Ed. 895, Mr. Justice Field, speaking on this subject of quieting titles, says:

"Thus a suit to quiet title to parcels of real property, or to remove a cloud therefrom by which their use and enjoyment by the owner are impaired, is brought within the cognizance of the court, under the statute, only by the value of the property affected."

In Lehigh Zinc & Iron Co. v. New Jersey Zinc & Iron Co. (C. C.) 43 Fed. 545, which was a bill to quiet title, the court held, quoting from the syllabus, that:

"For the purpose of determining the jurisdictional amount in a bill to quiet title, the whole value of the property, the possession or enjoyment of which is threatened by defendant, is the measure of the value of the matters in controversy."

The same principle was announced and followed by the United States Circuit Court of Appeals for the Ninth Circuit in Woodside v. Ciceroni, 93 Fed. 1, 35 C. C. A. 177.

In Simon v. House (C. C.) 46 Fed. 317, the proceeding was to set aside certain conveyances as fraudulent, and the court held that:

"In a proceeding to set aside certain conveyances as fraudulent and a cloud upon the plaintiff's title, the matter in dispute is the value of the land in controversy."

Supposing the premises sold under a mortgage executed to secure an indebtedness of $2,100 had, owing to the fact that the improvements were destroyed after the execution of the mortgage, been reduced in value to a sum less than $2,000, could the mortgagor maintain an action of ejectment for the recovery of the premises, or could the party in possession maintain an action of this kind, in a court of the United States, upon the ground that the mortgage debt was of sufficient value to authorize it, although the value of the lands, which was the only thing in controversy, was less than the amount necessary to enable a national court to assume jurisdiction?

This being an action involving the title to lands, and their value being in excess of $2,000, the necessary diversity of citizenship existing, it was properly removed, and the motion to remand must be overruled.