JOHNSON v. NORTH STAR LUMBER CO. et al.

(Circuit Court of Appeals, Ninth Circuit. July 14, 1913.)

No. 2,234.

1. COURTS (§ 371*)—JURISDICTION OF FEDERAL COURTS—REMEDIES GIVEN BY STATE STATUTES.

A suit brought by one not in possession to quiet title to lands in Oregon not in possession of another, authorized by L. O. L. Or. § 516, may be maintained in a federal court in that state, where the requisite diversity of citizenship exists between the parties.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 907, 972–976; Dec. Dig. § 371.*

Diverse citizenship as a ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. JUDGMENT (§ 489\*)—COLLATERAL ATTACK—WANT OF JURISDICTION.**

A judgment rendered by a court having no jurisdiction either of the parties or the subject-matter is a mere nullity and may be attacked collaterally.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 924, 925; Dec. Dig. § 489.\*]

**3. PROCESS (§ 96\*)—SERVICE BY PUBLICATION—SUFFICIENCY OF AFFIDAVIT.**

An affidavit made in another state but not authenticated as required by B. & C. Comp. Or. § 819, which provides that such affidavits must be certified by a commissioner for the state or by the judge of a court having a clerk and seal and attested by the clerk under the seal of the court, is a nullity for any purpose in Oregon and cannot be made the basis of an order for service by publication upon a defendant, under section 56 of such Codes.

[Ed. Note.—For other cases, see Process. Cent. Dig. §§ 108–120; Dec. Dig. § 96.\*]

**4. JUDGMENT (§ 497\*)—JURISDICTION OF COURT—SERVICE BY PUBLICATION.**

A recital in an order for service on a defendant by publication that "it appearing to the satisfaction of the court" that the defendant cannot be found within the state is not an adjudication or finding that it has been shown to the satisfaction of the court by affidavit that the "defendant after due diligence cannot be found within the state" which, under B. & C. Comp. Or. § 56, is essential to the acquiring of jurisdiction by such service which will sustain a judgment.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 937, 938; Dec. Dig. § 497.\*]

**5. JUDGMENT (§ 17\*)—PROCESS TO SUSTAIN JUDGMENT—ATTACHMENT.**

Under the law of Oregon, as settled by decision, an attachment is merely auxiliary to the main action, and the issuance and levy of an attachment does not give the court jurisdiction to render any judgment in the action without a valid service upon, or appearance by, the defendant.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 25–33; Dec. Dig. § 17.\*]

**6. ATTACHMENT (§ 211\*)—VALIDITY—PROOF OF DEFENDANT'S OWNERSHIP.**

To sustain the jurisdiction of a court to levy upon and sell property under an attachment against a nonresident defendant, it must be alleged and proved that the property was owned by such defendant, and, where at the time of the levy of the attachment the record title was in another, it is not sufficient evidence to prove such ownership that a deed thereto made by the defendant and containing a covenant of title was dated prior to the levy, where it was not delivered until afterward and on the same date as the delivery of a deed from the record owner conveying the property to him, since a deed speaks only from the date of its delivery.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. §§ 706–721; Dec. Dig. § 211.\*]

Appeal from the District Court of the United States for the District of Oregon; R. S. Bean, Judge.

Suit in equity by the North Star Lumber Company and others against John W. Johnson and others. Decree for complainants, and defendant Johnson appeals. Affirmed.

For opinion below, see 196 Fed. 56.

This is a suit brought in the United States Circuit Court for the District of Oregon by the North Star Lumber Company, a Minnesota corporation, against John W. Johnson and two others, all citizens of the state of Washington. The action is to quiet title to certain lands described as the northwest quarter of section 10, township 21 south, range 7 west of the Willamette

meridian, situate in Douglas county, state of Oregon. None of the parties to the action are citizens of the state of Oregon. The land in controversy is vacant, unoccupied timber land, not in the possession of either party to the action or any other person. The appellant alone appeared, filed an answer and cross-bill, and defended the action; the other two defendants defaulting.

The tract of land in controversy was originally a part of the public domain. It was conveyed to Aaron Johnson by the United States by patent dated September 10, 1906. The patent was preceded by a sale of the land to Aaron Johnson by the United States under the provisions of the act of Congress of June 3, 1878, entitled "An act for the sale of timber lands in the states of California, Oregon, Nevada and Washington Territory." The sale was evidenced by a certificate of sale dated February 18, 1902. While holding this certificate of sale from the United States, Aaron Johnson conveyed the land to one Andrew Johnson by deed dated May 21, 1904, recorded June 7, 1904. The title to the land acquired by purchase and patent remained in Andrew Johnson until by a deed dated April 8, 1907, delivered April 12, 1907, and recorded April 24, 1907, it passed to Aaron Johnson. The latter, by deed dated February 21, 1907, acknowledged March 8, 1907, delivered April 12, 1907, and recorded April 24, 1907, conveyed the land to the plaintiff. The deed from Andrew Johnson to Aaron Johnson was delivered on April 12, 1907, and on the same date Aaron Johnson delivered his deed to the plaintiff, and both deeds were recorded on the same day. Pending these proceedings, and on April 1, 1907, the defendant John W. Johnson commenced an attachment suit in the circuit court of the state of Oregon for Douglas county against Aaron Johnson and Eline Engebritson, and caused the land in controversy, then standing of record in the name of Andrew Johnson, to be attached in said action and on said day as the property of the two defendants therein named. It is not claimed that the defendant Eline Engebritson ever had any interest in the land in dispute. We have, therefore, no further concern in the relation of this defendant to the case. Andrew Johnson was not a party to the attachment suit.

In the attachment suit the plaintiff, on the 7th day of September, 1907, made an affidavit, subscribed and sworn to before one Charles W. Hodgdon, a notary public for Washington, residing at Hoquiam, Wash., in which the plaintiff undertook to allege certain facts concerning the residence of the defendant as the basis for an order of the court directing publication of the summons in the case. The statute of Oregon in force at this time respecting affidavits was contained in section 819 of Bellinger & Cotton's Annotated Codes and Statutes of Oregon, as follows: "An affidavit or deposition taken in another state of the United States or a territory thereof, the District of Columbia, or in a foreign country, otherwise than upon commission, must be authenticated as follows, before it can be used in this state: (1) It must be certified by a commissioner, appointed by the Governor of this state, to take affidavits and depositions in such other state, territory, district, or country; or (2) it must be certified by a judge of a court having a clerk and a seal to have been taken and subscribed before him at a time and place therein specified, and the existence of the court, the fact that such judge is a member thereof, and the genuineness of his signature shall be certified by the clerk of the court, under the seal thereof." Charles W. Hodgdon, the notary public in the state of Washington before whom plaintiff's affidavit was taken, was not a commissioner appointed by the Governor of the state of Oregon to take affidavits in the state of Washington, nor was he otherwise qualified to take plaintiff's affidavit for use in the state of Oregon. Upon this affidavit of the plaintiff an order of publication was made by the court; but no publication was then made.

On October 11, 1907, the plaintiff's attorney made and filed an affidavit with the court, alleging that by inadvertence he had neglected and omitted to have the summons published, and that the summons had not been published; that letters addressed to the defendant at Hoquiam, Wash., had been returned unopened and uncalled for; that the address of either of the defendants was unknown to the plaintiff and could not be ascertained with reasonable diligence; that due and strict inquiry had been made to ascertain such addresses from former friends of said defendants living at Hoquiam, Wash., by the

plaintiff and his attorneys at Hoquiam, Wash., and that no one could be found who knew their addresses. An affidavit of one Evelyn Johnson, dated September 10, 1907, was also filed, in which it was alleged that on the 10th day of September, 1907, at Roseburg, Or., affiant deposited in the United States post office, inclosed in an envelope securely sealed and with the postage fully prepaid, a copy of the complaint and summons, directed to be published in the action, duly certified to be such by the attorney for the plaintiff, plainly addressed to the defendant, Aaron Johnson, at Hoquiam, Wash.

Upon these affidavits the court, on October 11, 1907, made a second order of publication, reciting that, "it appearing to the satisfaction of the court that neither of the defendants above named" (Aaron Johnson and Eline Engebritson) "can be found within the state of Oregon, and that a cause of action exists against both of said defendants, and that both of said defendants are proper parties to the above-entitled action; and it appearing to the satisfaction of the court that the post office address of neither of the defendants is known and cannot be found with reasonable diligence, it is ordered," etc.

The law of Oregon relating to publication of summons is contained in section 56, Lord's Oregon Laws, and in section 56, Bellinger & Cotton's Annotated Codes and Statutes of Oregon, as follows: "When service of the summons cannot be made as prescribed in the last preceding section" [personal service in this case], "and the defendant after due diligence cannot be found within the state, and when that fact appears by affidavit to the satisfaction of the court or judge thereof, * * * or justice of the peace in an action in a justice's court, and it also appears that a cause of action exists against the defendant, or that he is a proper party to an action relating to real property in this state, the court or judge thereof * * * shall grant an order that the service be made by publication of a summons in either of the following cases: * * * (3) When the defendant is not a resident of the state, but has property therein, and the court has jurisdiction of the subject of the action."

Neither of the defendants appeared in the action, and a default judgment was entered on May 16, 1908, in which the land attached on April 1, 1907, was ordered to be sold to pay the judgment, amounting to the sum of $315, with interest at 8 per cent. per annum from May 16, 1908, the further sum of $30 attorney's fees, all in gold coin of the United States of America, and plaintiff's costs and disbursements, taxed at $14.50, and that execution issue to enforce the judgment. The land was sold to the plaintiff, John W. Johnson, for the sum of $380.04, and the sale was subsequently confirmed by the court. Thereafter, no redemption having been made of the premises, the sheriff of Douglas county, Or., delivered to John W. Johnson, the plaintiff and judgment creditor, the deed for the land described in the complaint and order of sale in that cause. It is under this deed that the defendant claims title to the land in controversy in this case.

In the present suit by stipulation of the parties the records and files of the Circuit Court of the state of Oregon in the attachment suit were introduced in evidence as the evidence of the defendant's title to the land in controversy. Upon the conclusion of the evidence, the court below directed a decree to be entered in favor of the plaintiff the North Star Lumber Company, and against the defendant, John W. Johnson, the court holding that the judgment in the attachment suit under which the defendant claimed title to the land was void; that the affidavit upon which the order of publication of summons was made in the attachment suit was not authenticated as required by law, and was, therefore, a nullity, and the order of publication of the summons based thereon was ineffective for any purpose.

Morgan & Brewer, of Hoquiam, Wash., and John Van Zante, of Portland, Or., for appellant.

James N. Davis and Veazie & Veazie, all of Portland, Or., for respondents.

Before GILBERT and MORROW, Circuit Judges, and WOLVERTON, District Judge.

MORROW, Circuit Judge (after stating the facts as above).  [1] 1.  In Oregon, a person claiming an interest or estate in real property, not in the possession of another, may maintain a suit in equity to remove the cloud or to quiet title, without being in actual possession of the premises.  Section 516, Lord's Oregon Laws; McLeod v. Lloyd, 43 Or. 260, 272, 71 Pac. 795, 74 Pac. 491; Holland v. Challen, 110 U. S. 15, 17, 3 Sup. Ct. 495, 28 L. Ed. 52.  In such a suit, where a diversity of citizenship exists as it does here, the Circuit Court of the United States for the district of Oregon had jurisdiction of the controversy, and, the action being local to that district, the court had jurisdiction over the subject-matter.  Section 8, Act March 3, 1875, c. 137, 18 Stat. 470 (U. S. Comp. St. 1901, p. 513); Dick v. Foraker, 155 U. S. 404, 410, 15 Sup. Ct. 124, 39 L. Ed. 201.  Further, the defendant, by answering the bill of complaint on the merits, and by filing a cross-bill submitting his title to the jurisdiction of the court and praying for affirmative relief, waived any objection he might otherwise have had to the jurisdiction of the Circuit Court of the District of Oregon.  Western Loan Co. v. Butte & Boston Min. Co., 210 U. S. 368, 28 Sup. Ct. 720, 52 L. Ed. 1101.

[2] 2.  Plaintiff's title to the land in controversy must prevail in this action, unless it is defeated by the title acquired by the defendant under the judgment in the attachment suit against Aaron Johnson.  This judgment is assailed by the plaintiff on the ground of lack of jurisdiction in the state court of Oregon to enter the judgment: (1) Because the court never acquired jurisdiction of the person of Aaron Johnson, the defendant in that case; (2) because the court never had jurisdiction over the land attached in that case and sold to the defendant under the judgment entered therein.

"A judgment rendered by a court having no jurisdiction either of the parties or the subject-matter is a mere nullity, and will be so held and treated whenever and for whatever purpose it is sought to be used or relied upon as a valid judgment." 23 Cyc. 681.

[3] 3.  With respect to the jurisdiction of the court over the person of the defendant, Aaron Johnson, the objection is that the defendant was a nonresident; that he was not found or served with summons in the state of Oregon; that he never appeared or answered in the action; and that the service by publication of the summons is void and ineffectual for the reason that the defendant had no property in the state; and that it was never made to appear to the court by affidavit to the satisfaction of the court, or to any judge thereof, that the defendant could not after due diligence be found in the state of Oregon; that no affidavit showing or attempting to show such fact was filed in said court; that, the court having no evidence before it by affidavit that the defendant could not after due diligence be found in the state of Oregon, it had no jurisdiction to make any order for service of the summons by publication.

It is further objected that the only evidence which tended to prove the facts required by the statute to be established was a paper purporting to be an affidavit signed by the plaintiff on the 7th day of September, 1907, in which it was stated that the defendant was not a resident

of the state of Oregon; that the defendant was not in the state of Oregon at the time of the making of the supposed affidavit, so as to be served with the summons personally in the state of Oregon; and that he could not be personally served in the state of Oregon. This paper appears to have been signed in the state of Washington, before a notary public of that state, who was not authorized by the laws of Oregon to take affidavits for use in the latter state. It was therefore a nullity for any purpose in the state of Oregon.

[4] It is contended, however, that the sufficiency of the allegation in the affidavit to prove that the defendant, after due diligence, could not be found within the state of Oregon was a matter for the adjudication of the trial court, and a recital of such adjudication in the order or judgment (nothing to the contrary of such recital appearing in the record) was conclusive evidence of the fact in this collateral proceeding. But the objection in this case is that the court made no adjudication upon the subject. The recital in the order of publication is:

"It appearing to the satisfaction of the court that neither of the defendants above named can be found within the state of Oregon. * * *"

There is no adjudication upon the question whether "the defendant after due diligence could not be found within the state," and this was a question jurisdictional in the publication of the summons. And there is the further subordinate objection that it appears from the record that the court had no affidavit before it upon which to make such adjudication, and no finding was made that such affidavit was before it, and, further, it appears from the record that there was no proof before the court of any character that "the defendant, after due diligence, could not be found within the state," and no such finding of fact was made by the court. It follows that as the only jurisdiction that the court had over the person of the defendant, Aaron Johnson, was the publication of the summons calling him into court, and the court having no jurisdiction to order the publication of summons in the case, and not finding the facts upon which such jurisdiction could be based, or upon which to adjudicate upon the jurisdictional question, the court acquired no jurisdiction over the person of the defendant, Aaron Johnson.

It would seem that the citation of authorities would be unnecessary to support this conclusion; but the leading case of Galpin v. Page, 85 U. S. (18 Wall.) 350, 25 L. Ed. 959, is so directly in point that we cannot omit reference to the discussion in that case of the question of jurisdiction acquired by service of summons by publication. That action was brought in the Circuit Court of the United States in California to recover possession of certain real property situated in the city and county of San Francisco. The plaintiff claimed title through a conveyance authorized by the probate court of the state, which administered upon the estate of the deceased former owner of the premises, and the defendant claimed title through a purchaser who bought at a commissioner's sale held under a decree of the district court of the state, rendered in an action brought to settle the affairs of a copartnership between the decedent and others. It was admitted in the United States Circuit Court that the plaintiff had the title, unless it

had passed to the purchaser at the commissioner's sale made under the decree in the state district court. Whether the title had so passed depended upon the question whether the district court had acquired jurisdiction over the person of a nonresident heir to the estate by publication of summons. The nonresident heir was the posthumous child of the decedent, who was made a party by a supplemental bill which contained the prayer that a guardian ad litem might be appointed for the child. The statute of the state which authorized constructive service by publication provided:

"When the person on whom the service is to be made resides out of the state, or has departed from the state, or cannot, after due diligence, be found within the state, * * * *and the fact shall appear by affidavit to the satisfaction of the court or a judge thereof,* * * * and it shall in like manner appear that a cause of action exists against the defendant, in respect to whom the service is to be made, or that he is a necessary or proper party to the action, such court or judge may grant an order that the service be made by the publication of the summons."

An order had been made by the district court directing publication of summons. In the order was a recital as in the present case "that it appeared to the satisfaction of the court" that the defendant resided out of the state, and that she was a necessary party to the action, etc. It was not stated in the order in what way the facts recited appeared, and no affidavit was found of record in the case. It seemed probable that the court might have acted upon the statement contained in the supplemental bill. But it appeared in the record that the summons was published as required by the order and as provided by the statute, and that thereupon the court appointed a guardian ad litem for the child who appeared and filed an answer in her behalf.

In the Circuit Court, with this record before it (Galpin v. Page, 3 Sawy. 93, Fed. Cas. No. 5,206), it was held that the recital in the order of publication of the jurisdictional fact, there being nothing in the record to the contrary, was conclusive evidence in a collateral proceeding of the determination of the fact upon sufficient evidence, although the evidence did not appear in the record. In the Supreme Court of the United States the decree of the Circuit Court was reversed upon the ground that this statement of the law was error. In speaking of the presumptions in support of judgments, the court said:

"The presumptions indulged in support of the judgments of superior courts of general jurisdiction are also limited to jurisdiction over persons within their territorial limits, persons who can be reached by their process, and also over proceedings which are in accordance with the course of the common law. The tribunals of one state have no jurisdiction over the persons of other states, unless found within their territorial limits; .they cannot extend their process into other states, and any attempt of the kind would be treated in every other forum as an act of usurpation without any binding efficacy. * * * Whenever, therefore, it appears from the inspection of the record of a court of general jurisdiction that the defendant, against whom a personal judgment or decree is rendered, was, at the time of the alleged service, without the territorial limits of the court, and thus beyond the reach of its process, and that he never appeared in the action, the presumption of jurisdiction over his person ceases, and the burden of establishing the jurisdiction is cast upon the party who invokes the benefit or protection of the judgment or decree. This is so obvious a principle, and its observance is so essential to the protection of parties without the territorial jurisdiction of a court,

that we should not have felt disposed to dwell upon it at any length had it not been impugned and denied by the Circuit Court. It is a rule as old as the law, and never more to be respected than now, that no one shall be personally bound until he has had his day in court, by which is meant until he has been duly cited to appear, and has been offered an opportunity to be heard. Judgment without such citation and opportunity wants all the attributes of a judicial determination; it is judicial usurpation and oppression, and never can be upheld where justice is justly administered. When, therefore, by legislation of a state, constructive service of process by publication is substituted in place of personal citation, and the court upon such service is authorized to proceed against the person of an absent party, not a citizen of the state nor found within it, every principle of justice exacts a strict and literal compliance with the statutory provisions. And such has been the ruling, we believe, of the courts of every state in the Union."

The court accordingly held that the sale of property under the judgment against the nonresident defendant was void for lack of jurisdiction over the person of such defendant.

The law of this case was followed by the Supreme Court of Oregon, in Goodale v. Coffee, 24 Or. 346, 354, 33 Pac. 990, 992, where the court said:

"It is well settled that statutes which provide for the service of process by publication are in derogation of the common law, and must be strictly construed. Odell v. Campbell, 9 Or. 298. The affidavit is the complaint upon which the judgment order for service is based, and must state every jurisdictional fact required by the statutes. McMillen v. Reynolds, 11 Cal. 372. If the affidavit be insufficient, the court acquires no jurisdiction over the defendant, and the judgment is void. Braly v. Seaman, 30 Cal. 610."

In McDonald v. Cooper, 32 Fed. 745, the United States Circuit Court for the district of Oregon had before it a judgment in the state court wherein it was claimed that a nonresident defendant had been brought into court by publication of a summons. Against this judgment it was objected that the state court had not acquired jurisdiction over the person of certain nonresident defendants, or the property which was the subject of the action: First, because the facts stated in the affidavit did not tend to show that any diligence was used to find the defendants within the state, or they could not have been found and served therein; and, second, because the facts stated did not tend to show that the defendants or either of them then had any property within the state. The statement of the affidavit was:

"They [the defendants] cannot be found within the state of Oregon, but both reside in San Jose, California, and that is their post office address."

As to whether the defendants or either of them had any property within the state at the time of the commencement of the suit, the statement of the affidavit was that the plaintiff therein "has a good cause of suit against the defendants to foreclose a certain mortgage on real property situate * * * in Oregon, executed, etc." Commenting upon the insufficiency of this affidavit, the court said:

"That diligence has been used to find the defendant within the state must appear from the affidavit, and a mere statement or assertion therein that the party is a nonresident thereof is not sufficient. Nor is such statement or assertion that diligence has been used a compliance with the statute. The affidavit must contain some evidence of the ultimate fact, besides the assertion of the affiant, on which the judicial mind may act in granting the order. And however slight and inconclusive this evidence may be, if it has a legal

tendency to prove the diligence, and that the defendant could not be found within the state, it is sufficient to give the court jurisdiction, and sustain the order against a collateral attack. But where there is no evidence of such diligence except the bald assertion of the fact, or that 'of nonresidence, the order is void, and the court does not acquire jurisdiction. * * * It must also appear from the affidavit that the defendant has 'property' in this state. The bare assertion that the defendant has such property is not sufficient. Some fact or facts must be stated tending to establish this conclusion on which the judicial mind may act."

It appears that the insufficiency of the affidavit in these respects was admitted by the defendant; but it was contended that the suit was to foreclose a mortgage, and that it was a suit in rem, and, as in the case now before this court (as we shall presently see), it was contended that the jurisdiction of the court did not depend upon the validity of the proceedings to authorize the publication of the summons, but on the fact that the property was within the state, and that the plaintiff had a lien thereon. The Circuit Court did not take this view of the proceeding, but held that the order of publication was void upon both of the grounds stated, and the subsequent proceedings thereon, including the sale to the defendant's predecessor in interest, were null and of no effect.

We conclude that in the present case it is clearly established that the state court never acquired jurisdiction over the person of Aaron Johnson in the attachment suit.

[b] 4. The defendant further contends that the attachment of the real property in controversy, and its subsequent sale under the judgment in the attachment suit, gave the court a jurisdiction over it that is not subject to attack in a collateral proceeding; in other words, that the attachment suit was a proceeding in rem, and the right to adjudicate upon the issues involved in the suit was acquired by the attachment of the defendant's property. The case of Cooper v. Reynolds, 77 U. S. (10 Wall.) 308, 319, 19 L. Ed. 931, is cited by the defendant in support of this doctrine. But this is not the law of Oregon. In Bank of Colfax v. Richardson, 34 Or. 518, 525, 54 Pac. 359, 361 (75 Am. St. Rep. 664), it was held that in that state:

"An attachment is merely auxiliary to the main action, and there is no difference in the proceedings thereon in an action brought against a nonresident, upon whom service is necessarily made by publication, and in one brought against a resident of the state, in which personal service is had. In either case the proceedings in attachment have nothing to do with the merits of the cause of action or the jurisdiction of the court to try and determine the controversy between the parties. If personal service is had, the cause becomes a mere action in personam, with the added incident that the property attached remains liable for any judgment the plaintiff may recover. But, if service is had by publication, and there is no appearance for the defendant, the action is practically a proceeding in rem against the attached property, the only effect of which is to subject it to the payment of the amount which the court may find due the plaintiff. Where no personal service is had, the res is brought within the power and control of the court by a seizure under a writ of attachment; but the right to adjudicate thereon is acquired only by the publication of the summons. It is the substituted service, and not the seizure, which gives the court jurisdiction to establish by its judgment a demand against the defendant, and to subject the property brought within its custody to the payment of that demand."

[6] But there is an equally conclusive objection to the judgment in the attachment suit, that no property of the defendant, Aaron Johnson, was ever attached or brought within the jurisdiction of the court. It is not alleged in the complaint in the attachment suit that the defendant in that action had any property in the state of Oregon, nor is there such an allegation in the affidavit for the attachment. In the paper signed and subscribed by the plaintiff in that action before the notary public in the state of Washington, on the 7th day of September, 1907, for the publication of summons, it was stated that the sheriff of Douglas county, Or., had, on the 1st day of April, 1907, served the writ of attachment by levying upon the real estate in controversy, and that said property, on the 1st day of April, 1907, belonged to the defendant, Aaron Johnson. But, as we have already determined, this paper was a nullity for any purpose in the state of Oregon. It was ineffectual to establish any fact in the case; but if it had been effectual for that purpose, it was contradicted by the county records of the county in which the land was situated. On the 1st day of April, 1907, the defendant, Aaron Johnson, was not in possession of the property and had no title to it of record in Douglas county, Or.; the title to the real estate in controversy standing at that time in the name of Andrew Johnson in the records of that county. The only basis for claiming that the defendant, Aaron Johnson, owned the attached property on the 1st day of April, 1907, is the fact that on the 12th day of April, 1907, Andrew Johnson delivered to Aaron Johnson a deed for the property, and on the same day the latter delivered a deed to the plaintiff herein for the same property. Both of these deeds were recorded on April 24, 1907. There is no evidence in the record of the case of any ownership of this property other than that disclosed by the recorded deeds.

The only claim of title in the defendant, Aaron Johnson, on the 1st day of April, 1907, is the fact that the deed of Aaron Johnson to the plaintiff, the North Star Lumber Company, dated February 21, 1907, contains a covenant on the part of Aaron Johnson:

"That he is well seized in fee of the lands and premises aforesaid, and has a good right to sell and convey the same in manner and form aforesaid."

The title at that time, as has been stated, was in Andrew Johnson. The consideration for the deed to the plaintiff is stated to be the sum of $2,000, paid to Aaron Johnson by the North Star Lumber Company, receipt of which is acknowledged by Aaron Johnson. Is the covenant of seisin contained in this undelivered deed such evidence of title to the land in Aaron Johnson, on February 21, 1907, the date it was signed, or on March 8, 1907, the date it was acknowledged, that the land was subject to attachment as his property on April 1, 1907, notwithstanding that during all this time the title was in Andrew Johnson? Furthermore, Andrew Johnson and Emma Johnson, his wife, executed a deed to Aaron Johnson, dated April 8, 1907, whereby the latter acquired title to the land upon the delivery of the deed, and in this deed the grantors covenanted:

"That they are the owners in fee simple absolute of all and singular the above-granted and described premises, and the appurtenances; that they have good and lawful right to sell and convey the same."

If the covenant in the first deed is evidence of title in Aaron Johnson at any time prior to the delivery of the deed, so is the covenant in the latter evidence of title in Andrew Johnson, and the latter contradicts and nullifies the first, but with the decided advantage in favor of the title in Andrew Johnson, who had the record title from May 21, 1904, down to the time of these transactions. But the plain fact is that both of these conveyances and their covenants had relation to the delivery of the deeds, and upon delivery became effective, and not before.

A deed speaks as of the date of its delivery to or for the grantee.

"Delivery of a deed is essential to the transfer of the title," and, "to constitute such delivery the grantor must part with possession of the deed or the right to retain it." Younge v. Guilbeau, 70 U. S. (3 Wall.) 636, 641, 18 L. Ed. 262.

"Nothing passes by a deed until it is delivered." Parmelee v. Simpson, 72 U. S. (5 Wall.) 81, 85, 18 L. Ed. 542.

"Delivery is essential to the validity of a deed." Fain v. Smith, 14 Or. 82, 84, 12 Pac. 365, 58 Am. Rep. 281.

"No instrument is executed until it is delivered." Howard Insurance Co. v. Silverberg, 94 Fed. 921, 922, 36 C. C. A. 549.

We know of no exception to this rule. There has been some question as to what constitutes delivery of a deed, and there has been some diversity of legislation and opinion upon that subject; but that question is not material here. Under this rule the title did not pass from Andrew Johnson to Aaron Johnson until the delivery of his deed on April 12, 1907, and on the same day, and not before, the title passed to the plaintiff.

Our conclusion is that there is no evidence in the record that Aaron Johnson was the owner of the land in controversy when the attachment was levied on April 1, 1907, and, as the validity of the judgment depended upon that fact, it follows that the judgment was invalid for the reason that the defendant was not at the time of the levying of the attachment the owner of the land.

That this conclusion is in accordance with the substantial equities of the case is supported by a stipulation entered into by the parties at the conclusion of the trial of this case in the court below, to the effect that a witness called on behalf of the plaintiff should be deemed to have testified that the plaintiff had no knowledge of the fact that the attachment suit had been brought or that the real property in controversy had been attached, or that any judgment had been rendered therein or any sale made thereunder, until about 30 days prior to the commencement of the present action. The plaintiff was, therefore, a purchaser for a valuable consideration, without any notice of defendant's claim of title.

It follows that the state court never had jurisdiction over the land attached in the attachment suit, and that the judgment in that case was void and of no effect.

The decree of the lower court in favor of the plaintiff was correct, and it is affirmed.