NEW JERSEY & N. C. LAND & LUMBER CO. et al. v. GARDNER–LACY LUMBER CO. et al.

(Circuit Court of Appeals, Fourth Circuit.  April 18, 1910.)

No. 805.

1. EQUITY (§ 53*)—REMEDY AT LAW—TIME OF RAISING QUESTION.
    The objection that a federal court of equity is without jurisdiction because there is a plain, adequate, and complete remedy at law may be raised or considered ex mero motu at any stage of the case.
    [Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 173–176; Dec. Dig. § 53.*]

2. QUIETING TITLE (§ 12*)—RIGHT OF ACTION—SUFFICIENCY OF COMPLAINANT'S POSSESSION.
    What constitutes possession of land is a mixed question of law and fact, possession consisting of the exercise of acts of dominion over it, in making the ordinary use of it, and taking the ordinary profits it is capable of yielding in its present state.
    [Ed. Note.—For other cases, see Quieting Title, Cent. Dig. § 44; Dec. Dig. § 12.*
    Necessity of possession in suits to quiet title, see note to Jackson v. Simmons, 39 C. C. A. 522.]

3. QUIETING TITLE (§ 35*)—ACTIONS—SUFFICIENCY OF BILL—ALLEGATIONS OF POSSESSION.
    Allegations in a bill to quiet title that complainant "is the owner in fee seised and in possession of" the land, and has been in possession and paid the taxes for 30 years, that the land is timber land, and complainant has built mills thereon, and cut and manufactured timber and marketed the lumber, and that defendants have committed trespasses thereon—are sufficient allegations of complainants' possession.
    [Ed. Note.—For other cases, see Quieting Title, Cent. Dig. §§ 73, 74; Dec. Dig. § 35.*]

4. COURTS (§ 262*)—FEDERAL COURTS—EQUITY JURISDICTION—SUITS INVOLVING BOTH LEGAL AND EQUITABLE QUESTIONS—ADEQUACY OF REMEDY AT LAW.
    A federal court of equity is not without jurisdiction of a suit expressly authorized by a state statute, and in which equity alone can afford the entire relief sought because of the fact that legal questions are also involved.
    [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 797, 798; Dec. Dig. § 262.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**5.** COURTS (§ 262*)—FEDERAL COURTS—EQUITY JURISDICTION—SUITS TO QUIET TITLE.

A federal court of equity is not without jurisdiction of a suit to quiet title, where the bill sufficiently alleges title and possession in complainant, merely because a defendant in his answer sets up an adverse title and possession, but it must be left to the proofs to determine whether the questions in issue are legal only and such as are not within the court's jurisdiction under the Constitution and statutes.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 797, 798; Dec. Dig. § 262.*]

**6.** COURTS (§ 262*)—FEDERAL COURTS—EQUITY JURISDICTION—SUITS TO QUIET TITLE.

Under Acts N. C. 1893, c. 6 (Revisal 1905, § 1589), which provides that "an action may be brought by any person against another who claims an estate or interest in real property adverse to him for the purpose of determining such adverse claim," although a federal court of equity is without jurisdiction of a suit brought thereunder against numerous defendants claiming severally different portions of the tract of land involved. on the ground of preventing a multiplicity of suits, that ground is available only to oust the court of jurisdiction in respect to such defendants as raise the objection, and, where the bill sufficiently alleges title and possession in complainant, it is error to dismiss it as to defendants, who have made no defense, but have submitted themselves to the jurisdiction of the court, and to decrees pro confesso.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 797, 798; Dec. Dig. § 262.*]

Appeal from the Circuit Court of the United States for the Eastern District of North Carolina, at Wilmington.

Suit in equity by the New Jersey & North Carolina Land & Lumber Company and others against the Gardner-Lacy Lumber Company and others. Decree of dismissal (161 Fed. 768), and complainants appeal. Reversed.

Iredell Meares (Robert Ruark, on the brief), for appellants.

George Rountree (Rountree & Carr and John D. Bellamy & Son, on the brief), for appellees.

Before PRITCHARD, Circuit Judge, and WADDILL and CONNOR, District Judges.

CONNOR, District Judge. Complainant the New Jersey & North Carolina Land & Lumber Company filed its bill in equity December 12, 1901, alleging: That it was a corporation chartered and organized under, and pursuant to, the laws of the state of New Jersey. That the defendant the Gardner-Lacy Lumber Company was a corporation chartered and organized under, and pursuant to, the laws of the state of South Carolina, and having a place of business in the Eastern District of North Carolina, and that the other defendants were citizens and residents of the Eastern District of North Carolina. That it was the owner in fee, seised and in possession by virtue of grants issued by the state of North Carolina January 1, 1795, and set out as exhibits, and by mesne conveyances, of contiguous tracts of land, situated in the counties of Columbus and Brunswick, in said district of said state, aggregating 170,000 acres and constituting one tract. That said land consists, in great measure, of what is known as cypress and juniper

swamp lands. That complainant has for over 30 years had possession of said land, except some small tracts within the lines, which complainant, or those from whom it derives title, conveyed out of the principal tracts, and that for more than said time complainant has exercised dominion over said land, having some 20 years ago built and operated a large lumber plant thereon, and cut and shipped timber therefrom, and from time to time has occupied and rented parts thereof, has had agents, and paid taxes thereon, for 28 years. That defendants as to some parts of the said land have filed entries under chapter 17 of the Code of North Carolina upon the pretense that such entries cover vacant and unappropriated lands, and, without obtaining a grant, and in fraud of said act, as well as of the rights of complainant, have gone upon the said land so illegally entered and committed acts of trespass thereon. As to other parts of said land, defendants have obtained grants from the state under said chapter of the Code of North Carolina in fraud of said act and of the complainant, either by themselves directly, or indirectly by purchase from parties who had obtained such grants, and have gone upon the lands called for by such grants, and committed trespass thereon. That all of said entries and grants have been made and obtained so as to cover bodies of timbered lands within the boundaries of the tracts owned by complainant, consisting of juniper, cypress, and pine, which are of great value, and which constitute the chief value of the lands belonging to,·and in possession of, complainant. That defendants, under such illegal entries and grants, have gone upon the lands of complainant at sundry times, and cut and removed therefrom cypress, juniper, pine timber, etc. That the defendant the Gardner-Lacy Lumber Company operates at Georgetown, S. C., a large sawmill. That it has constructed a tramway at or near the mouth of Juniper creek, in Columbus county, North Carolina, and has established a branch office and shop at Excelsior, near the said Juniper creek, and it is engaged in cutting and removing timber and logging the same down Waccamaw river to its sawmill and plant at Georgetown. That said company· has constructed its tramway up to, or across, the boundary lines of complainant's land, and had employed several hundred hands, and is engaged in cutting and removing cypress, juniper, and pine and other timber from the lands of complainant. That said company is encouraging and inducing others, ·as well as its employés, to commit acts of trespass, spoliation, and injury to the timber lands of complainant, etc. Complainant charges that other like acts of trespass, spoliation, and destruction have been, and are being, committed by other persons, whose names are unknown, and the complainant will ask leave to make them parties defendant; that it is unable to prevent such acts of trespass without great expense, labor, and litigation, all of which, it says, would cause "endless litigation, and subject it to great inconvenience and expense; that actions of law and suits in equity against various and sundry persons would not be an adequate remedy to redress the wrongs of which it complains; that it would involve a multiplicity of suits to establish the titles of.complainant, etc."

Complainant also alleges that while it is informed of its own lines, the same having been surveyed, and the fact that the defendants and

others are committing acts of trespass within its boundaries, it has been unable to ascertain from the records of Brunswick and Columbus counties the particular grants or deeds, if any, under which defendants pretend to justify and defend their acts of trespass upon complainant's lands, etc. Wherefore complainant prays that defendant be required to disclose to the court the grants, entries, claims, or deeds under which they claim the right to cut timber upon said land. It also asks that defendant be enjoined from further trespassing upon complainant's land; that they account for the timber cut and removed therefrom; that complainant be declared to be the owner of said lands; and that the pretended claims, grants, entries, and deeds of defendants are illegal and void. It also demands that defendants be required to make discovery: First. Whether they jointly or severally claim any right, title, or interest in said land, and, if so, under what grants, deeds, leases, or claims, and that they file a full and complete abstract of such title, etc. Second. Whether they have entered upon the lands and cut or removed timber or logs therefrom, and, if so, the quantity, quality, and value thereof.

Copies of complainant's grants, maps, etc., are attached to the bill. A temporary restraining order, with an order to show cause, was issued. From time to time new parties were brought in by order of the court and orders made, declaring them to be the owners of the land described in their answers and the bill dismissed as to them. The Gardner-Lacy Lumber Company demurred to the bill, assigning as grounds therefor that the same was exhibited against said defendant and several other defendants for several distinct, separate, and independent matters and causes, which have no relation to each other; that it appears upon the face of the bill that the real cause of action is to try the title to said lands, and is maintainable only in a court of law. Twenty-three other defendants demurred, assigning the same causes. An interlocutory decree was made, the terms of which are not necessary to set out, except that complainant was required within 20 days to formulate issues and "take steps to have its title to the land claimed by the Gardner-Lacy Lumber Company tried by a jury, and, upon failure to do so, the restraining order should be dissolved, but the cause retained." Defendant McKeithan filed an answer denying the material allegations of the bill, and setting up title to a tract of land under a grant from the state, dated January 1, 1852. On February 9, 1902, the demurrers filed by the Gardner-Lacy Lumber Company were overruled, and defendant required to answer the bill. As to defendant McKeithan and others, who filed answers, it was ordered that issues of fact be tried by a jury at the next term of the court. The injunction was continued. On the same day a large number of new parties were brought in by order of the court. Thereafter the Gardner-Lacy Lumber Company filed its answer, reserving all of its rights, denying the material allegations of the bill, and setting up title to certain tracts of land, the description and abstract of title to which are set forth in schedule attached to the answer. Several other defendants filed answers, some of them joining in one answer, and others filing separate answers, setting up title to tracts of land, described therein. On July 3, 1903, a decree pro confesso was passed as to a

number of defendants who had not answered, and on November 4, 1904, another decree pro confesso was made as to other defendants not answering. This decree was stricken out, as to several of the defendants, and an order made allowing them to answer. Final decrees, by consent, were made as to some of the defendants, who had answered, adjudging the complainant to be the owners of the lands described in the answers. From time to time other orders and interlocutory decrees were made. On April 12, 1905, judgment of nonsuit by default was rendered against complainant as to the Gardner-Lacy Lumber Company and the other defendants under whom it claimed title. The cause was retained for the purpose of assessing damages against complainant sustained by defendant Gardner-Lacy Lumber Company by reason of the injunction. On March 1, 1907, this judgment was vacated and stricken out, and the cause restored to the "same position as if the said judgment by default had not been entered." At the same time, an order was made directing a survey of the lands claimed by complainant and defendants. An order was made making the Waccamaw Land & Lumber Company party complainant. On September 2, 1907, defendants served notice on complainant that they would move the court to dismiss the bill "on the ground that the same does not contain sufficient equities to give the court jurisdiction of the matter in controversy." On January 25, 1908, the judge heard the motion and made a decree containing certain recitals, not necessary to set out here, and concluding:

"It seems that there is an adequate and complete remedy at law and the jurisdiction of the court of equity should not have been invoked. It is therefore adjudged that the bill be dismissed and the complainant take nothing, defendants go without day and recover their cost."

Complainants appealed.

The complainant assigns a number of errors, several of which are directed to recitals of fact in the decree regarding the course of the suit. It is not necessary to make further reference to these recitals, because it is manifest that the judge dismissed the bill for that he was of the opinion that the court was without jurisdiction to entertain it. He says:

"Unless it (the jurisdiction) affirmatively appears on the record, the bill should be dismissed, ex mero motu, if necessary. In the suit at bar the substance is an action of ejectment to recover the land and the other remedies or relief asked for are subsidiary, and ancillary to the main purpose. Title should be established first, before complainant is entitled to an accounting."

Before proceeding to discuss the assignment of error, it will be well to note the condition of the record. On February 11, 1903, an interlocutory order thereinbefore made, granting an injunction, was modified, permitting the Gardner-Lacy Lumber Company to file a bond to answer for any damages sustained by complainant by reason of cutting and removing timber. This order recites that a demurrer had been filed, "which demurrer will be more properly considered on the hearing on the next rule day." Notwithstanding this recital, the record (page 80) shows that on February 9, 1903, a decree was made overruling the demurrer and directing the defendant to answer. On the same day an order was made bringing in 100 new parties defend-

ant, directing subpœnas to issue for them. A receiver was appointed and the injunction extended to the new parties. The answer of the Gardner-Lacy Lumber Company was filed May 30, 1903. This all shows that the court was of the opinion, at the time that he passed upon the demurrer, that the bill contained sufficient averments to give the court jurisdiction of the cause. We do not concur in the suggestion that by failing to note an exception to the decree, overruling the demurrer, the defendants were precluded from raising the same question at a later stage of the proceeding, or that the ruling became "the law of the case" so that the court could not ex mero motu dismiss the bill if it subsequently reached the conclusion that it did not have jurisdiction, either upon the bill or the case as developed upon the answer and proofs. Street's Fed. Eq. Prac. 376, 377; Southern Pac. Ry. v. United States (No. 1) 200 U. S. 341, 26 Sup. Ct. 296, 50 L. Ed. 507. Judge Brewer, however, in his opinion, states the limitations on the practice. While the defendant did not waive the right to make the motion to dismiss, nor the court lose the power to do so, ex mero motu, after the demurrer was overruled and decree pro confesso, as to many of the defendants, and after answer by others had been entered, declaring complainant's rights, it would seem that a decree dismissing the bill carrying with it all proceedings theretofore had, and all rights acquired pendente lite, should not have been made, certainly not without preserving such rights, so far as within the power of the court in the then state of the record. Without pursuing this phase of the case further, we note what is said in Brown v. Lake Sup. Iron Co., 134 U. S. 530, 10 Sup. Ct. 604, 33 L. Ed. 1021. We are of the opinion that there was error in dismissing the bill, and proceed to give our reasons for this conclusion.

Complainant insists that the jurisdiction may be upheld upon either of the following grounds: First. The statute of North Carolina (Acts 1893, c. 6 [Revisal 1905, § 1589]), entitled "An act to quiet titles," etc. Second. As a bill to quiet title and remove cloud therefrom under the general equity jurisdiction of the court. Third. As a bill to relieve against fraud. Fourth. As a bill to prevent destructive waste. Fifth. As a bill to prevent a multiplicity of suits.

We concur with counsel for defendants upon the authorities cited in their well-considered argument and briefs that it would be difficult, if not impossible, to uphold the bill upon either of the four grounds last named, but, as we are of the opinion that jurisdiction may be sustained upon the first ground, it is unnecessary to discuss many of the interesting questions presented upon the others. The North Carolina statute is in the following language:

"An action may be brought by any person against another who claims an estate or interest in real property adverse to him for the purpose of determining such adverse claim."

This statute is in the same language as that enacted in California and Utah, both of which have been construed by the Supreme Court of the United States, and, in substance, the same as those of several other states; the principal difference being that in them it is expressly provided that the plaintiff may bring the action "whether in or out of

possession." The Supreme Court of North Carolina has held that such is the proper construction of this statute. Daniels v. Baxter, 120 N. C. 14, 26 S. E. 635. In Whitehead v. Shattuck, 138 U. S. 146, 11 Sup. Ct. 276, 34 L. Ed. 873, the court sustained a demurrer to the bill brought under the statute of Iowa, permitting the action to be brought by any person claiming title "though not in possession," because it was alleged that defendant was in possession. This decision was put upon the ground that, the defendant being in possession, the plaintiff had a complete and adequate remedy at law, thus excluding the jurisdiction of the federal court under the provision of section 723, Rev. St. (U. S. Comp. St. 1901, p. 583). What may be the correct interpretation of the North Carolina statute in that respect is immaterial here, because the bill expressly avers that the complainant "is the owner in fee, seised and in possession of" the land described—setting forth grants from the state and mesne conveyances. It further avers that it has had such possession for 30 years, stating the acts of dominion exercised over it, which, in view of the character of the land, and the use of which it is capable, is sufficient to constitute possession. What constitutes possession of land. is a mixed question of law and fact. "Exercising that dominion over the land and taking that use and profit which it is capable of yielding in its present state is possession." Ruffin, J., Simpson v. Blount, 14 N. C. 34. "Possession is denoted by the exercise of acts of dominion over the property in making the ordinary use and taking the ordinary profits of which it is susceptible in its present state—such acts to be so repeated as to show that they are done in the character of owner, and not as an occasional trespasser." Gaston, J., in Williams v. Buchanan, 23 N. C. 535, 35 Am. Dec. 760. Measured by this standard, there can be no doubt that the bill alleges that complainant is in possession of the land. It is not necessary that it should go further and negative defendants' possession, although it is expressly averred that they are committing acts of trespass, which excludes the idea of possession. In Clark v. Smith, 13 Pet. 195, 10 L. Ed. 123, a bill was filed, under a statute of Kentucky, substantially like the North Carolina act. The court, sustaining the jurisdiction, said:

"The courts of the United States * * * are only applying an old practice to a new equity created by the Legislature."

In Holland v. Challen, 110 U. S. 15, 3 Sup. Ct. 495, 28 L. Ed. 52, the bill was filed under the Nebraska statute. Plaintiff did not aver possession, but alleged:

"That defendant was contriving to wrong and injure your orator in the premises by claiming to be the owner of said real estate, and by trying to obtain, take, and keep possession thereof," etc.

The case came up on demurrer. Mr. Justice Field, after an interesting discussion of the averments necessary to maintain a bill of peace or a bill of quia timet to remove a cloud from title, says:

"The statute of Nebraska authorizes a suit in either of these classes of cases, without reference to any previous judicial determination of the validity of plaintiff's rights and without reference to his possession."

After pointing out the reasons which induced the enactment of this and similar statutes, and their beneficial effects, saying that "they accomplished a most useful purpose," he says:

"There is no good reason why the right to relief against an admitted obstruction to the use, and improvement of lands thus situated in the states, should not be enforced by the federal courts, when the controversy to which it may give rise is between citizens of different states."

After referring to the fact that in Clark v. Smith, supra, plaintiff was in possession, he says:

"The truth is that the jurisdiction to relieve holders of real property from vexatious claims to it, casting a cloud upon their title, and thus disturbing them in its peaceable use and enjoyment, is inherent in a court of equity; and, though conditions to its exercise have at different times been prescribed by that court, both in England and in this country, they may at any time be changed or dispensed with by the Legislature without impairing the general authority of the court"—citing Broderick Will Case, 21 Wall. 520, 22 L. Ed. 599.

Meeting the objection that the complainant should go into a court of law to try the title, the learned judge says:

"No adequate relief to the owner of real property against the adverse claims of parties not in possession can be given by a court of law. If holders of such claims do not seek to enforce them, the party in possession, or entitled to possession, the actual owner of the fee, is helpless in the matter, unless he can resort to a court of equity. It does not follow that, by allowing in the federal courts a suit for relief under the statute of Nebraska, controversies properly cognizable in a court of law will be drawn into a court of equity. Undoubtedly as a foundation for relief sought, the plaintiff must show that he has a legal title to the premises and generally that the title will be exhibited by conveyances or instruments of record, the construction and effect of which will properly rest with the court. Such also will generally be the case with the adverse estate or interest claimed by others."

The decision was cited and approved in Reynolds v. Bank, 112 U. S. 405, 5 Sup. Ct. 213, 28 L. Ed. 733. While in Whitehead v. Shattuck, 138 U. S. 146, 11 Sup. Ct. 276, 34 L. Ed. 873, the bill was dismissed because it appeared upon its face that the defendant was in possession and the plaintiff had a complete, adequate remedy at law, Holland v. Challen, supra, was noted and distinguished. Judge Field said:

"It would be difficult and perhaps impossible to state any general rule which would determine in all cases what should be deemed a suit in equity as distinguished from an action at law, for particular elements may enter into consideration which would take the matter from one court to the other; but this may be said, that, when an action is simply for the recovery and possession of specific real or personal property, or for the recovery of a money judgment, the action is one of law."

The distinction pointed out in this case was again discussed in Scott v. Neely, 140 U. S. 106, 11 Sup. Ct. 712, 35 L. Ed. 358. In Wehrman v. Conklin, 155 U. S. 314, 15 Sup. Ct. 129, 39 L. Ed. 167, the question again came up, and, after referring to the former decisions, Mr. Justice Brown said:

"These statutes have generally been held to be within the constitutional power of the Legislature; but the question still remains, to what extent will they be enforced in the federal court, and how far are they subservient to the constitutional provision entitling parties to a trial by jury and to express provisions of the Revised Statutes (section 723), inhibiting suits in equity in any

case when a plain, complete, and adequate remedy may be had at law. These provisions are obligatory at all times, and under all circumstances, and we are applicable to every form of action, the laws of the state notwithstanding."

In the Conklin Case, supra, the court took jurisdiction and made a decree for complainant. In Gormley v. Clark, 134 U. S. 338, 10 Sup. Ct. 554, 33 L. Ed. 909, complainant filed his bill under a statute enacted by the Legislature of Illinois, known as "The Burnt Records Act" (Rev. St. Ill. c. 116), to meet conditions occasioned by the Chicago Fire. Chief Justice Fuller, discussing the questions involved, says:

"While the rule is thoroughly settled that remedies in the courts of the United States are at common law or in equity, according to the essential character of the case, uncontrolled, in that particular, by the practice of the state courts, after all, enlargements of equitable rights by state statutes may be administered by the Circuit Courts of the United States, as well as by the courts of the state; and when the case is one of a remedial proceeding, essentially of an equitable character, there can be no objection to the exercise of the jurisdiction."

It is strenuously insisted that the remedy at law was adequate, and that, as the right of possession was purely a legal question and for a jury, the court of chancery should have declined to take jurisdiction; but, inasmuch as the case came within the provisions of the statute, and equity could alone afford the entire relief sought, the fact that legal questions were also involved could not oust the court of jurisdiction. The jurisdiction of equity attaches unless the legal remedy, both in respect to the final relief and the mode of obtaining it, is as efficient as the remedy equity would afford under the same circumstances. Dick v. Foraker, 155 U. S. 405, 15 Sup. Ct. 124, 39 L. Ed. 201.

In Devine v. Los Angeles, 202 U. S. 313, 26 Sup. Ct. 652, 50 L. Ed. 1046, Chief Justice Fuller, referring to the California statute, says:

"This statute enlarges the ancient jurisdiction of the courts of equity in respect of suits to quiet title, but, the equitable rights themselves remaining, the enlargement thereof may be administered by the Circuit Courts of the United States as well as by the courts of the state."

The writer had occasion to consider the scope and effect of the North Carolina statute in the case of Campbell v. Cronly, 150 N. C. 457, 64 S. E. 213, reviewing the decisions of the courts of other states, in which similar statutes have been enacted. We cite only two, and select these because of the eminent learning of the members of the court, and the fact that in New Jersey the courts of law and equity are separate, and rights and remedies administered in separate jurisdictions. In Holmes v. Chester, 26 N. J. Eq. 79, the chancellor, discussing the statute, says:

"It is highly remedial and beneficial. It should therefore be construed liberally. It is a statute of repose. It deprives the defendant of no right. His claim may be tried at law if he desires it."

In Jersey City v. Lembeck, 31 N. J. Eq. 255, Beasley, C. J., said:

"The inequity that was designed to be remedied grew out of the situation of a person in possession of land as owner in which land another person claimed an interest, which he would not enforce, and the hardship was that the person so in possession could not force his adversary to sue and thus put the

claim to the test." Albro v. Dayton, 50 N. J. Eq. 574, 25 Atl. 937; Adler v. Sullivan, 115 Ala. 582, 22 South. 87; Grether v. Wright, 75 Fed. 742, 23 C. C. A. 498.

The doctrine first announced in Clark v. Smith, 13 Pet. 195, 10 L. Ed. 123: "That, when a state statute gives a new equity, a federal court of equity may be called upon to enforce it, or that an enlargement of equitable rights resulting from a state statute may be enforced in a federal court of equity"—is thus commented upon by Prof. Street (volume 1, § 28, Fed. Eq. Prac.):

"In studying the cases illustrative of this principle, it should be borne in mind that equity is a system of remedies. The fundamental nature of these remedies has been developed and illustrated in the English Court of Chancery and in other courts exercising equitable jurisdiction. The use to which these remedies have been put, in a measure, defines their character for all times, and thus establishes the limits of the jurisdiction of the court. But, when new rights are created by statutes, the equitable remedy may be used to enforce them if it is adapted to the purpose. A moment's reflection will show that this must necessarily be so, otherwise equitable principles would appear to be as fixed and unyielding as the old legal remedies. This would be contrary to the very nature of equity. It will be noted that the recognition of the principle above stated operates indirectly to extend the scope of efficacy of the equitable remedies as enforced by the federal courts in particular localities. This, in a sense, undoubtedly increases the jurisdiction of the court, but the result is only incidental, and indirect, and the general principle that a state law cannot directly effect the jurisdiction of the federal court is left unimpaired. Always, in considering the nature and function of the federal courts, it must be that they are courts of the various states in which they sit, as well as the courts of the United States. It is therefore their duty in administering justice to take account of rights created and existing under the state laws as well as those created and existing under the laws of the United States." Greely v. Lowe, 155 U. S. 58, 15 Sup. Ct. 24, 39 L. Ed. 69; Trust Co. v. Asphalt Co., 127 Fed. 2, 62 C. C. A. 23.

The limitation of the power of the federal court to take jurisdiction in such cases is found in the constitutional provision (seventh amendment) that, when the rights of property involved are such as entitle the defendant to trial by jury, the court of equity cannot proceed to try the question. When, however, the allegations of the bill present equitable right or rights within the equitable powers of the court, it takes jurisdiction. If it develops, upon the hearing, that only legal right or rights cognizable in a court of law are involved, the court ex mero motu will dismiss the bill. Street says that the existence of an adequate remedy at law in respect to some matters of a controversy is not always a valid objection to the exercise of equitable jurisdiction of those matters. Fed. Eq. Prac. § 20. Arrowsmith v. Gleason, 129 U. S. 86, 9 Sup. Ct. 237, 32 L. Ed. 630. It will be observed that the only question presented by the assignment of error, to the decree dismissing the bill is whether, upon any aspect of the case, the court had jurisdiction. The decree is not confined to a dismissal as to the Gardner-Lacy Lumber Company or any other of the defendants, but the entire bill, with all interlocutory judgments and decrees, is dismissed. In the light of the principles and authorities discussed, we think that sufficient allegations are made in the bill to confer jurisdiction.

The complainant avers that it is the owner of the land described, showing grants from the state and alleging mesne conveyances, that

it is and has been, for 30 years, in possession, alleging such facts as are sufficient to constitute possession of lands of the character described, juniper and cypress swamps. It also alleges that at large expense it has caused the lands to be surveyed, and is paying annually large sums as taxes thereon. In addition to the grants to its predecessor in title, it has acquired from the state other and further muniments and assurances of title; that certain legislation by General Assembly during the year 1893 declared all grants issued subsequently thereto are absolutely void for all purposes, and "shall in no case and under no circumstances constitute any color of title to any person," etc.; that the defendants have, in fraud of the state and its legislation, made entries on said land, claiming that the same was vacant, and that the defendants have taken out grants for other portions of said land, and that they are committing acts of trespass, spoliation, and destruction, cutting and removing valuable timber therefrom, etc.; that these acts of trespass are made under and pursuant to said entries and grants, etc. It is true that the complainant does not allege that the Gardner-Lacy Lumber Company has made any entry of or taken out any grants for said lands, or any part thereof. We fail to find anything more than a rather vague allegation of acts of trespass upon a portion of the land by this defendant, and it is not clear that the court below was not in error in overruling its demurrer. It would seem that all of the defendants were entitled to have the complainant make its allegations more specific in regard to the alleged acts of trespass of each defendant, etc., but no motion to this effect was made, and no such question is presented upon the record. It is strenuously urged that if the court takes jurisdiction and passes upon the muniments of title under which defendants claim to own the parts of the land in controversy, in which they aver that they are in possession, they will be deprived of their constitutional right of trial by jury. The same objection has been urged in other cases, wherein the court, either in the exercise of its general equity jurisdiction or in enforcing equitable rights and remedies created by state legislation, has been asked to take jurisdiction. It has been met by the answer that, when the bill and proof disclosed conditions which are within equitable cognizance, relief has been awarded, whereas, when the same sources disclose merely legal rights, or rights to which legal remedies and modes of procedure and trial, the court refused to interfere, and sent the parties to courts of law. This is elementary. It frequently occurs that equitable and legal elements are so mingled that it is difficult to separate them, but this does not oust the jurisdiction. Decrees are so molded as to meet the different phases of the controversies, that the rights of the litigants are preserved and appropriate remedies applied. If, upon the coming in of the survey, and the taking of testimony, it be found that as to any or all of the defendants no rights cognizable in a court of equity are involved, the court will as to such defendants dismiss the bill, preserving such rights as have been acquired by decrees rendered in the cause, and send the parties to a court of law. For instance, complainant sets out a statute declaring that certain grants shall be absolutely void, conferring no color of title upon those holding under them. If it shall appear upon taking the proofs that any of the defendants had

such a grant, and claim that they have by an ouster followed by seven years' possession ripened into perfect title, would it not be clearly within the power of the court to declare such grants void for all purposes? No possible question for a jury could arise upon them. If, upon the contrary, it shall appear that any of the defendants are claiming and are in adverse possession under grants junior to complainant's, or have other muniments of title sufficient to give color, the question of ouster and adverse possession being purely matters of fact, the court would send the parties to a jury. It may be that other questions may arise which would control the action of the court. We express no opinion upon them, except to say that the defendants cannot oust the jurisdiction simply by answering and alleging title in themselves. If the averments of the bill taken as confessed confer jurisdiction, the court must examine the answer and exhibits, and take sufficient proof to inform itself whether it has jurisdiction to proceed to final decree. This must be done upon well-settled principles of equity practice. To refuse to do this, upon the pleadings as they stood at the time the decree of dismissal was rendered, was to make the North Carolina statute of "none effect" in the federal court. Certainly as to those defendants who made no defense and submitted themselves to the jurisdiction of the court and to decrees pro confesso and those who after answering submitted to decrees, the jurisdiction was conceded—that is, it was conceded that the complainant had set out such facts as entitled it to appeal to a court of equity for relief, and that the court had jurisdiction by reason of diversity of citizenship, and the bill as to them should not have been dismissed.

As to the Gardner-Lacy Lumber Company, it does not appear that any more is alleged than an ordinary trespass. It is not alleged that it has taken out any grants or laid any entries within the complainant's boundaries. In its answer it sets up title to certain lands, a description of which is set forth in a schedule (by consent omitted from the record). It does not appear whether they are within complainant's boundaries. It is not clear that, as to this defendant, the bill should not be dismissed. The survey and map when made will show how this is, when appropriate orders may be made. The record will then be in a condition to enable the court to pass upon the different phases of the case and the rights of the several defendants. For the reasons set out in Hale v. Allinson, 188 U. S. 56, 23 Sup. Ct. 244, 47 L. Ed. 380, and United States v. Bitter Root Co., 200 U. S. 451, 479, 26 Sup. Ct. 318, 50 L. Ed. 550, we are of the opinion that the jurisdiction cannot be upheld to prevent a multiplicity of suits. "It is not a case when a few defendants may be made parties or representatives of a class holding under, or claiming under the same right or title, and so that a judgment against the representative defendants may bind all others of the class. There is no class and there can be no representative." It is probable that the court below should have sustained the demurrer because the bill was multifarious, but that would not have worked a dismissal, except as to those defendants joining in the demurrer. That defect did not go to the jurisdiction. "When a demurrer for multifariousness or misjoinder of causes of action is sustained, it is not always proper to dismiss the plaintiff out of court without making

some provision for the protection of his rights. The court should use its discretion, and, if the plaintiff wishes to amend by putting his pleading in unexceptionable form, he should be allowed to do so." 1 Street's Fed. Eq. Prac. 444. We do not deem it necessary to discuss the other question debated in the arguments and the briefs. The order dismissing the bill will be reversed and such further proceedings had, as may be in accordance with the course and practice of the court.

Reversed.