NEW JERSEY LAND & LUMBER CO. v. GARDENER LACY LUMBER
CO. et al.

(Circuit Court, E. D. North Carolina.    September 10, 1911.)

(No. 31.)

**1. COURTS (§ 371\*)—FEDERAL COURTS—EQUITY JURISDICTION—REMEDIES GIVEN BY STATE STATUTE.**

Where a state statute creates a new equitable right, and the other elements of federal jurisdiction exist, such as diverse citizenship, the federal court will take jurisdiction, when such enforcement will not contravene the constitutional provision entitling parties to trial by jury or provisions of Rev. St. § 723 (U. S. Comp. St. 1901, p. 583), inhibiting suits in equity in any case where a plain, adequate, and complete remedy may be had at law, but not otherwise.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 907, 972-976; Dec. Dig. § 371.\*

Jurisdiction of federal courts as affected by state laws.    See note to Barling v. Bank of British North America, 1 C. C. A. 513.]

**2. JURY (§ 31\*)—RIGHT TO TRIAL BY JURY—SCOPE OF CONSTITUTIONAL PROVISION.**

The right to trial by jury guaranteed by the seventh constitutional amendment cannot be restricted by either Congress or the courts, and the sending of an issue of fact out of chancery to be tried before a jury does not meet the requirement of such provision in cases where it is applicable.

[Ed. Note.—For other cases, see Jury, Cent. Dig. § 207; Dec. Dig. § 31.\*]

**3. JURY (§ 31\*)—FEDERAL COURTS—EQUITY JURISDICTION—SUIT TO QUIET TITLE.**

A federal court of equity is without jurisdiction of a suit to quiet title by a complainant out of possession as against a defendant who by his answer and the answers to interrogatories attached shows that he is in possession of a portion of the land involved, claiming title by adverse possession, and he alleges facts which, if proved, support such title under the laws of the state, even though a statute of the state authorizes such a suit, the issues therein being of fact, cognizable at law, and on which such defendant is entitled to a jury trial in the federal courts.

[Ed. Note.—For other cases, see Jury, Dec. Dig. § 31.\*

Right to trial by jury in federal court, see notes to O'Connell v. Reed, 5 C. C. A. 603; Vany v. Peirce, 26 C. C. A. 528.]

In Equity.    Suit by the New Jersey Land & Lumber Company against the Gardener Lacy Lumber Company and others.    On exceptions to report of special master.    Exceptions overruled, and suit dismissed as to certain defendants.

Meares & Ruark, for plaintiff.
Rountree & Carr and Bellamy & Bellamy, for defendants.

CONNOR, District Judge.    This cause was before the Circuit Court of Appeals upon appeal from a decree made by the late Judge Purnell, dismissing the bill, for that the complainant had an ample and complete remedy at law.    In the opinion (178 Fed. 772, 102 C. C. A. 220) a history of the cause up to, and including, that time, is given.

When the cause came on for hearing upon the mandate of the court reversing the decree, an order of reference was made to E. S. Martin, Esq., special master, directing him to—

"find the facts by the record and evidence upon which arise the issues between the complainant and each of the defendants, and report in due course. The special master is advised that the purpose, primarily, of this reference, is to enable the court to determine which, if any, of the controversies between the several defendants and the complainant are properly triable in a court of law or equity, and authority is conferred upon him in his discretion to investigate and report all necessary facts to this end. He will find the facts upon which arise the controversies either as to the whole or any part of the lands described in the bill of complaint. * * * He will further find whether or not claim of title is set up by the defendant or defendants in his or their answer, and, if so, under what claim, etc. He is further directed to report which, if any, of the controversies between the parties, have been settled and should be eliminated" etc.

The special master on March 18, 1911, made his report, setting out the names of the defendants, in respect to whom judgments pro confesso, or by way of compromise, had been entered. He made an analysis of the answers filed by the other defendants, setting forth the admissions made and defenses set up by them. He states his conclusions as follows:

"That in each and all of the controversies between complainant and the respective defendants set forth above the pleadings raise issues of fact. That all of said defendants plead adverse possession of the lands claimed by them under known and visible boundaries for periods sufficient to ripen their respective titles into perfect titles, and also the statutes of seven and twenty years under grants and conveyances subsequent to the grants complainant sets out in the bill, and prior to the act of 1893 [Laws 1893, c. 490], except as to one tract claimed by Henry Smith, under a grant dated in 1900 and two tracts claimed by G. S. Ellis, under grants dated, one December 29, 1893, and one in 1900, but whether said grants are void under the act of 1893, as being on lands previously granted, the facts do not show, and three tracts claimed by N. B. Roberts under deeds dated in 1894, 1896, 1899, but as to these tracts, Roberts fails to state in his answer the date of the grants under which he claims, and therefore it cannot be determined whether or not the said deeds are void under the act of 1893. * * * That each of said defendants is entitled to have said issue tried by a jury in a court of law under the principles laid down in the opinion of the Circuit Court of Appeals for the Fourth Circuit in this suit."

Complainant in due time filed the following exceptions to the report of the special master:

"(1) The report is only an attempt at an abstract of the record of the case, and that does not purport to be a complete abstract. The record speaks for itself.

"(2) The referee has not taken any proofs as to the merits of the case, and the complainants have had no opportunity to offer these in support of the bill of complaint."

In addition to the prayer for judgment removing alleged clouds from its title, complainant prays that defendants, under oath, make discovery and answer a number of interrogatories; the first being:

"Whether or not the defendants jointly, or severally, claim any right, title, interest, or estate of any kind in and to the lands of the plaintiff, as hereinbefore described, and, if so, under what grants, deeds, claims, leases, or other

instruments or surveys they set up their claim thereto with a full and complete abstract of their alleged title."

Defendants responding to the first interrogatory, under oath, set out the title under which they claim the several portions of the land described in the bill, of which they allege they are in possession. No exception is taken to the answer, nor is any replication filed.

For the reason given in the opinion, the Circuit Court of Appeals held that in the then condition of the record the bill should not have been dismissed, that decrees pro confesso and other decrees affecting the rights of complainant, which should be protected, had been made, etc. The appeal was argued upon the theory that the order appealed from was based upon the allegations of the bill. The Circuit Court of Appeals so treated the case, and said:

"If the averments of the bill, taken as confessed, confer jurisdiction, the court must examine the answers and exhibits, and take sufficient proof to inform itself whether it has jurisdiction to proceed to final decree."

It further said:

"If it shall appear, upon taking the proofs, that any of the defendants had such grant (those declared void and not color of title under the act of 1893), and claim that they have, by an ouster, followed by seven years possession ripened into perfect title, would it not be clearly within the power of the court to declare such grants void for all purposes? No possible question for a jury could arise upon them. If, upon the contrary, it shall appear that any of the defendants are claiming and are in adverse possession under grants junior to complainant's, which are color of title, and have other muniments of title sufficient to give color, the question of ouster and adverse possession being purely matters of fact, the court would send the parties to a jury."

The large number of defendants, coupled with the somewhat confused condition of the record, induced the court to send the case for the purposes set out in the order of reference to a master. It is apparent from the bill and answers as found by the master that, as to all of the defendants, save Ellis, Smith, and Roberts (as to a few tracts), the defendants claim under grants junior to those under which complainant claims (not affected by the act of 1893), and that their title is dependent upon sustaining their allegation of an ouster followed by seven years adverse possession, which, under the statute in force in North Carolina, for more than a century, not only tolls the entry of the true owner, but confers title upon the disseisor. Rev. 1905, § 382. The answers of the defendants in respect to their title or claim—its source and basis—are clear, full, and explicit. With a few exceptions, they claim under separate and distinct grants, junior to complainant's, having no connection with each other. The alleged ousters are of different dates, and the evidence regarding their possession will necessarily be different in character, etc. The pleadings disclose a condition not unusual in this state. In the latter part of the eighteenth century (1795) the state made grants of large bodies of land —largely swamp and of small value. The grantees held, as to large portions of these lands, but a constructive possession. As the population increased, the people moving into the sparsely settled sections

made entries upon such small tracts within the boundaries of the original grants as were capable of cultivation and suitable for homes. It was the policy of the state to issue grants to any persons who complied with the statutory requirements and paid the nominal price charged therefor, without inquiring whether such entries covered lands theretofore granted. Of course, if the entry covered land theretofore granted, the grantee took no title—the land was not subject to entry and grant—but if the junior grantee ousted the senior grantee, claiming under his grant as color of title, and followed his disseisin or ouster by adverse possession for seven years the entry of the senior grantee was tolled, and such ouster, followed by adverse possession, under color of title, for the statutory period, ripened into perfect title. The answers filed by defendants herein setting up grants junior to those under which complainant claims, followed by alleged adverse possession, present questions or issues of fact upon which under the Constitution and the uniform practice of the courts they are entitled to have a trial by jury. When the cause was before the Circuit Court of Appeals, complainant based the contention that it was entitled to invoke the jurisdiction of the court of equity upon a number of grounds, all of which were rejected, except the North Carolina statute, providing a remedy for quieting title, etc. Rev. § 1589. The learned counsel for complainant insist that in the light of the pleadings and the report of the master the court of equity has the power, and that it is its duty, to hear and determine the controversies between complainant and the several defendants.

[1] In view of this contention, it may be well to briefly review the decisions of the Supreme Court in cases wherein similar state statutes have been relied upon. In one or more of these cases language may be found which, unless examined with care and in the light of elementary principles, may be thought to lead to the conclusion upon which the argument is based in this case. Before referring particularly to the decisions, it may be well to recall a few fundamental truths which must be kept constantly in view. "Suits in equity shall not be sustained in either of the courts of the United States in any case where a plain, adequate and complete remedy may be had at law." Section 723, Rev. St. (page 583, U. S. Comp. St. 1901). The jurisdiction of courts of equity to maintain bills for the purpose of removing clouds from title, or quieting title in England and in this country, at the time the federal Constitution was adopted, was well settled, and its boundaries well defined. These were recognized and enforced by the federal courts. The same limitations were enforced in the courts of those states wherein the distinction between actions at law and suits in equity and the jurisdiction between courts of law and equity were observed. Numerous decisions may be found in the federal and state court reports recognizing and enforcing the principles upon which the jurisdiction was fixed. Because of the limitations upon the jurisdiction of courts of equity to entertain these bills, they were not often filed. In North Carolina we find but few cases in which parties sought to invoke the jurisdiction. The latest are Busbee v. Macy, 85 N. C. 329, and Busbee v. Lewis, 85 N. C.

332. The bills were dismissed for want of jurisdiction in equity. The Legislatures of many of the states, including North Carolina, for the purpose of removing the difficulties which parties encountered in maintaining these suits and enlarging the class of cases in which relief could be had, enacted statutes entitling them to sue, without regard to the question of possession, and removing other obstructions to the maintenance of such suits in courts of equity. In many of the states enacting these statutes the reformed Codes of Procedure abolishing the distinction between actions at law and suits in equity were adopted and jurisdiction conferred in all civil actions upon the same court. Questions of jurisdiction in the state courts became therefore of no importance. The statutes, in conformity with the public policy upon which they were enacted, were liberally construed to advance the remedy. 4 Pom. Eq. § 1396. The question soon arose whether these statutes, in cases where diverse citizenship existed, could be enforced in the federal courts. In Holland v. Challen, 110 U. S. 15, 3 Sup. Ct. 495, 28 L. Ed. 52, complainant's bill was based upon the Nebraska statute, similar to the North Carolina act, alleging diverse citizenship as the ground of jurisdiction in the federal court. It was alleged that neither party was in possession. Defendant demurred for that complainant had not made or stated such a case as entitled him to the discovery or relief prayed. Mr. Justice Field, writing the opinion overruling the demurrer, citing Broderick's Will Case, 21 Wall. 520, 22 L. Ed. 599, says:

"While it is true that alterations in the jurisdiction of the state court cannot affect the equitable jurisdiction of the Circuit Court of the United States. so long as the equitable rights themselves remain, yet an enlargement of equitable rights may be administered by the Circuit Courts as well as by the courts of the state."

The learned justice is careful, however, to say:

"It does not follow that by allowing in federal courts a suit for relief under the statute of Nebraska controversies properly cognizable in a court of law will be drawn into a court of equity. * * * If the controversy be one in which a court of equity only can afford the relief prayed for, its jurisdiction is unaffected by the character of the questions involved."

It will be observed that the case was decided upon demurrer. In Reynolds v. Bank, 112 U. S. 411, 5 Sup. Ct. 216 (28 L. Ed. 733), the bill to remove a cloud from the title was filed under the Indiana statute. A motion to dismiss was refused, and the cause was heard upon the bill and answer. Mr. Justice Woods said:

"It may be conceded that the Legislature of a state cannot directly enlarge the equitable jurisdiction of the Circuit Court of the United States. Nevertheless an enlargement of equitable rights may be administered by the Circuit Court as well as by the courts of the state. And although a state law cannot give jurisdiction to any federal court, yet it may give a substantial right of such character that, when there is no impediment arising from the residence of the parties, the right may be enforced in the proper federal tribunal whether it be a court of equity, admiralty, or common law."

Holland v. Challen, supra, is cited. The answer was treated as evidence and the decree for complainant was "sustained by the admissions of the answer." In Whitehead v. Shattuck, 138 U. S. 146,

11 Sup. Ct. 276, 34 L. Ed. 873, the bill was filed under the Iowa statute, which gave "an action to determine and quiet the title to real property * * * by any one having or claiming an interest therein, whether in or out of possession of the same against any person claiming title thereto, though not in possession." Mr. Justice Field wrote the opinion, saying that the statute, as construed by the Supreme Court of Iowa, permitted suit to be brought against one in possession of the property. He says:

· "If that be its meaning, an action like the present can be maintained in the courts of that state where equitable and legal remedies are enforced by the same system of procedure and by the same tribunals. It thus enlarges the powers of a court of equity as exercised in the state courts, but the law of that state cannot control the proceedings in the federal court so as to do away with the force of the law of Congress declaring that 'suits in equity shall not be sustained in either of the courts of the United States in any case where a plain, adequate and complete remedy may be had at law,' or the constitutional right of parties in actions at law, to a trial by jury. The state, it is true, may create new rights and prescribe the remedies for enforcing them. and, if those remedies are substantially consistent with the ordinary modes of proceeding in equity, there is no reason why they should not be enforced in the courts of the United States."

The learned justice proceeds to discuss the opinion written by himself in Holland v. Challen, supra, after which he says:

"All that was there said was applied simply to the case presented where neither party was in possession of the property. No word was expressed intimating that suits of the kind could be maintained in the courts of the United States where the plaintiff had a plain, adequate and complete remedy at law; and such inference was especially guarded against"—repeating the language heretofore quoted in Challen's Case. ·

In this case the decree dismissing the bill was affirmed. Greeley v. Lowe, 155 U. S. 58, 15 Sup. Ct. 24, 39 L. Ed. 69. In Wehrman v. Conklin, 155 U. S. 314, 15 Sup. Ct. 129, 39 L. Ed. 167, the bill was filed under the Iowa statute, a demurrer was overruled, and the cause heard upon the pleadings and proofs. Mr. Justice Brown in an exhaustive opinion discusses the questions presented here. Referring to the cases wherein the jurisdiction of the court of equity was sustained under state statutes, he says:

"These statutes have generally been held to be within the constitutional power of the Legislature; but the question still remains to what extent will they be enforced in the federal courts, and how far are they subservient to the constitutional provision entitling parties to a trial by jury and to the express provision of the Revised Statutes, § 723, inhibiting suits in equity in any case where a plain, complete, and adequate remedy may be had at law. These provisions are obligatory at all times and under all circumstances, and are applicable to every form of action, the laws of the several states, to the contrary notwithstanding."

The learned justice proceeds to review the cases cited herein. In regard to Whitehead v. Shattuck, supra, he said:

"It was there held that, when the proceeding is simply for the recovery and possession of specific, real, or personal property, or for the recovery of a money judgment, the action is one at law. * * * The real question, then, to be determined in this case, is whether the plaintiffs have an adequate remedy at law. If they have, then section 723 is controlling, and, notwithstand- ·

ing a local practice under the Code, where no discrimination is made between actions at law and in equity, may authorize such suits, the federal courts will not entertain the bill, but will remit the parties to their remedy at law."

The question under examination has been discussed in a number of cases in the federal courts. In Gordon v. Jackson (C. C.) 72 Fed. 86, the bill was filed to remove a cloud from title. Williams, District Judge, says:

"These suits are, in effect, an effort on the part of an alleged owner out of possession to recover from a party in possession lands alleged to be improperly withheld."

He holds that upon well-settled principles of equity jurisprudence this cannot be done. But, he says, it may be insisted that this suit was maintainable under the provisions of the statute of Arkansas, which provided that a suit might be brought by one out of possession against one in possession to determine the estate or title of the occupant and quiet the title of the plaintiff.

" * * * There were decisions of the federal courts made with regard to similar statutes that might well have been construed by the eminent and learned counsel who brought these suits as giving force to the state statute in chancery practice in the federal courts. Later decisions, however, are directly to the effect that this cannot be the case, and show that the former decisions, properly construed, never intended to permit such practice. * * * When lands were wild and unoccupied, it had been held that the federal courts in chancery could entertain suits to quiet title in the rightful owner. But in such cases a court of law can afford the owner no remedy, and therefore there is no right to a trial by jury, since such right existed only in cases at law. It is therefore no violation of the Constitution or statute to bring such suits in equity. But, when lands are unlawfully occupied, the owner can sue the occupant at law, and the consequent right to trial by jury exists."

The learned judge proceeds to review the cases cited herein, and concludes:

"The questions presented by the pleadings and evidence in this case have regard largely to the dates when defendants entered upon and occupied the lands in dispute, the extent and character of their possession and their claim of title as arising therefrom. These are questions that are appropriately triable at law, and the defendants have a right under the Constitution and statutes of the United States to demand that they shall be thus tried. They presented their demand in apt time."

In Davidson v. Calkins (C. C.) 92 Fed. 230, it is held that under the California statute, allowing a bill to quiet title, where the defendant was in possession, did not confer jurisdiction in equity upon the federal court. The opinion reviews the decisions at much length. In Southern Pine Co. v. Hall, 105 Fed. 84, 44 C. C. A. 363, Shelby, Circuit Judge, discussing the same question under the Mississippi statute, says:

"If the record in this showed that the defendant was in the actual possession of the lands so that an action of ejectment could be brought against her for the lands, then it would appear that there was an adequate remedy at law, and jurisdiction in equity would not exist in the United States courts, although the statute conferred such jurisdiction on the Mississippi state courts. The result of the decision of the Supreme Court is that a state statute which enlarges equitable rights will be enforced and administered in the United States courts in all cases where its enforcement and administration do not conflict with the right of a party to a jury trial."

In Buchanan v. Adkins (4th Circuit) 175 Fed. 692, 99 C. C. A. 246, Judge Goff, discussing, upon demurrer, a bill filed in the Circuit Court of the United States, says:

"As we understand the bill in its entirety, * * * it clearly appears that the defendants are actually residing upon the various portions of the lands they respectively claim, holding the same by patents from the state, by deeds, by court claims, by color of title adverse to the title of the complainants; that in some instances their titles have become adversary by occupations superior to the title of the complainant," etc.

After a full and able discussion of the allegations of the bill, he concludes that the real object of the suit is to obtain by the decrees of a chancellor that which, under our jurisprudence, can only be had by a judgment rendered upon the verdict of a jury. The bill was dismissed. It was held in this case (178 Fed. 772, 102 C. C. A. 220) the bill was not demurrable, but upon the coming in of the answers and the discovery under oath, and the report of the special master, it is apparent that the defendants, claiming under various sources of title, unconnected with each other, are in possession of such portions of the land as are within the alleged boundaries. The decisions of the questions raised by the pleadings will depend upon parol evidence respecting the ouster, and the character, extent, and continuity of the alleged adverse possession. These questions are peculiarly within the province of a jury. There are with the exceptions noted by the master no grants, deeds, or other muniments of title relied upon by defendants, the cancellation of which would affect complainant's title. Defendants concede that complainants have the senior grant, and that the junior grants, under which they claim, do not convey title. Their claim is based upon a ouster under the junior grants, which are but colorable title, sufficient, however, to mark the extent of their alleged ouster and the boundaries of their adverse possession. In Brown v. Cranberry Iron & Coal Co. (C. C.) 40 Fed. 849, a bill was filed in the Circuit Court of the United States for the Western District of North Carolina for partition of the lands described therein. Defendant answered, denying complainant's title, alleging sole seisin in itself. Judge Dick retained the cause with liberty to complainant to institute an action of ejectment at law within 12 months, etc. Simonton, Circuit Judge, in 72 Fed. 96, 18 C. C. A. 444, says:

"The course pursued by the learned judge who heard this case is in strict accord with the law and practice of courts of chancery. * * * Where on a bill for partition when partition is a subject of equity jurisdiction the legal title is disputed and doubtful, the course is to send the plaintiff to a court of law to have his title first established. Equity has no jurisdiction to try the title to lands. An action at law is ordered, and not an issue out of chancery." Fisher v. Carroll, 46 N. C. 27.

The same course was adopted by Judge Pritchard in Gilbert v. Hopkins (C. C.) 171 Fed. 704, sustained by a well-considered opinion. In those cases, as here, the answers set up legal defenses triable by a jury. Carlson v. Sullivan, 146 Fed. 476, 77 C. C. A. 32. In Woods v. Woods (C. C.) 184 Fed. 159, a bill in equity for partition was filed in the Circuit Court of the United States for the Northern District of West Virginia. It appeared that certain parties had taken possession of a

portion of the lands under unlawful leases, etc. Complainants sought to have them canceled as clouds upon the title followed by a decree for partition. To the contention that the court was without jurisdiction to remove the cloud from the title Judge Goff said:

"I think it is well established that, if a court of equity has properly before it for decision a suit based on facts showing independent equity grounds relating to real estate, it will consider and decide questions concerning the title or the boundary thereof, if necessary to the proper disposition of the controversy. * * * If the complainants show an independent right to equitable relief, such as will authorize equitable jurisdiction, the prayer to quiet title will be entertained, even though they are not in possession."

The learned judge quotes the West Virginia statute, giving to the court, in proceedings for partition, power "to take cognizance of all questions of law affecting the legal title that may arise." Referring to the opinion in Buchanan v. Adkins, 175 Fed. 692, 99 C. C. A. 246, written by himself, he says:

"With the rule laid down in that case I am in full accord, and it is, I think, quite apparent that were it not for the reasons I have already referred to, relating to independent grounds of equity jurisdiction, this cause would not now be entertained."

The order was made directing that "proper issues be submitted to the jury on the law side of the docket." A careful examination of the pleadings will disclose that the case is distinguished from the Buchanan Case and the Cranberry Iron & Coal Company Case, in which the only question raised was sole seisin. The jurisdiction to inquire into the title in the Woods Case is, as said by Judge Goff, based upon the well-settled rule in equity practice that, when the court has jurisdiction to administer the primary relief sought, it will retain the cause and dispose of collateral questions which might otherwise be cognizable in a court of law. Here, while there is some suggestion in the bill, of confusion of boundary, multiplicity of suits, etc., as grounds of jurisdiction as pointed out in the opinion on the appeal (178 Fed. 772, 102 C. C. A. 220), the bill fails to set forth any grounds of equity jurisdiction other than the North Carolina statute.

[2] To the suggestion that issues of fact raised upon the pleadings be submitted to a jury, it is well settled that sending issues out of chancery does not meet or secure the right to trial by jury as guaranteed by the seventh amendment to the Constitution. This right is absolute, and may not be restricted or limited by either Congress or the courts. In ascertaining the purpose of the states in adopting and incorporating the amendment into the Constitution, we must recur to the course and practice of the courts in England and this country at that time. In Scott v. Neely, 140 U. S. 106, 11 Sup. Ct. 712, 35 L. Ed. 358, Chief Justice Fuller, referring to the Constitution and section 723 of the Revised Statutes, says:

"It is declaratory of the rule obtaining and controlling in equity proceedings from the earliest period in England and always in this country. And so it has been often adjudged that, whenever respecting any right violated a court of law is competent to render a judgment affording a plain, adequate and complete remedy, the party aggrieved must seek his remedy in such court, not only because the defendant has a constitutional right to a trial by jury,

but because of the prohibition of the act of Congress to pursue his remedy in such cases in a court of equity."

The distinction between a trial before a jury in a court of law with its incidents and conclusive effect upon the court and an issue out of chancery for the aid and enlightenment of the chancellor, is fundamental. As said by Chief Justice Fuller in Cates v. Allen, 149 U. S. 451, 13 Sup. Ct. 883, 977, 37 L. Ed. 804:

"As the ascertainment of complainant's demand is by action at law, the fact that the Chancery Court has the power to summon a jury cannot be regarded as the equivalent of the right of trial by jury secured by the seventh amendment."

If it were a question of discretion whether the court in this case should retain the cause and submit issues to the jury, it is manifest that it should not do so.

[3] There are more than 30 defendants claiming title to separate and distinct parcels or tracts of land under separate sources of title, in the trial of each of which it is apparent the evidence will be entirely different. The trial of all of these issues before one jury would involve confusion and expenses resulting almost certainly in injustice. The plain, well-defined rules of practice and procedure at law are not only adequate to work out complete justice, but a departure from them would violate the constitutional right of the parties, and tend to oppression and injustice. Complainant is entitled to a decree, as upon a disclaimer, as to such portions of its boundary as are not included in the claims of defendants who have answered. By Act 1893, c. 490 (Rev. 1905, § 1699), all grants issued subsequent to March 6, 1893, for lands theretofore granted by the state, are declared absolutely void, and "shall in no case and under no circumstances constitute any color of title whatsoever to any person or persons whomsoever."

The master having found that defendant, Henry Smith, claims under a grant issued in 1900 and defendant N. B. Roberts claims under certain deeds dated 1894, 1896, and 1899, not stating the date of grants and defendant G. S. Ellis claiming under grant dated December, 1893 and 1900, the bill will be retained as to such defendants, and as to the lands specified in the report.

In respect to the other defendants, claiming under grants junior to complainant's, prior to March 6, 1893, followed by ouster and adverse possession, the bill will be dismissed without prejudice to complainant's right to institute actions at law to try the title. The defendants as to whom the bill is dismissed will recover their cost. Let a decree be drawn accordingly.